496 So.2d 650 (1986)
STATE of Louisiana
v.
Duaine David GUIDRY.
No. 86 KA 0081.
Court of Appeal of Louisiana, First Circuit.
October 15, 1986.
Writ Denied January 23, 1987.
*651 John R. Walker, Asst. Dist. Atty., Houma, for plaintiff and appelleeState.
Indigent Defenders Office, Houma, for defendant and appellantDuaine David Guidry.
Before SAVOIE, CRAIN and JOHN S. COVINGTON, JJ.
SAVOIE, Judge.
Defendant, Duaine Guidry, appeals his conviction on two counts of attempted simple burglary and sentence of three years at hard labor.
During the early morning hours of April 29, 1985, Elijah Baker was working as a security guard at Collins New and Used Auto Parts on Highway 90 in Terrebonne Parish. Baker's car was at the time parked outside the office to the business. Baker first observed defendant when defendant opened the door to the car, causing the car's dome light to illuminate. In response, Baker reported the incident to the sheriff's office. Defendant subsequently exited the car, picked up a plastic garbage can and threw it against the glass window at the front office. When the glass did not break defendant then picked up a piece of asphalt and threw it, successfully breaking the glass window. Defendant then moved the glass and crawled partially inside the office. With defendant's legs still outside and the upper half of his body inside the office, Baker, who was inside, drew his pistol and told defendant: "Hold it. If you move your finger, I'll pull mine," to which defendant responded, "I'm guilty."
Thereafter, at about 5:15 a.m., Deputy Louis Vernon Bourgeois, Jr., of the Terrebonne Parish Sheriff's Office arrived at the scene. As Deputy Bourgeois approached the office, he saw defendant standing outside the office with his hands raised. At the time, he could not see Baker but later found out Baker was holding a gun on defendant. The deputy placed defendant against a car with his hands on the car, frisked defendant for weapons and advised him of his Miranda rights. Within seconds thereafter, defendant advised the deputy that he had tried to break inside the office building.
Upon inspection of Baker's car by Baker and Deputy Bourgeois, it was determined that papers, which had been inside the car's glove compartment, had been strewn about the front seat and floor of the car, and Baker's tape player had been disconnected from the dashboard and placed on the floorboard. Additionally, during Deputy Bourgeois' frisking of defendant, he found eight or nine .38 caliber revolver bullets inside defendant's pants pocket. Defendant admitted he had taken the bullets while inside Baker's car.
Defendant, was subsequently charged by bill of information with two counts of simple burglary in violation of LSA-R.S. 14:62. He entered pleas of not guilty and elected to be tried by jury. Defendant was convicted on both counts of attempted simple burglary, responsive verdicts. See LSA-C. Cr.P. art. 814(A)(44). Defendant was then sentenced to three years at hard labor on each count with the sentences running concurrently.
Defendant now appeals, urging six assignments of error, to wit:
1. The trial court erred in denying defendant's motion to suppress his out of court statements.

*652 2. The trial court erred in denying defendant's motion for a mistrial based upon a juror having spoken to a witness during a recess.
3. The trial court erred in ruling that the out of court statements made by defendant were freely and voluntarily made.
4. The trial court erred in overruling defendant's objection to the introduction of the state's exhibits one through five into evidence.
5. The verdict of the jury is contrary to the law and evidence.
6. The sentence is excessive.
Assignments of error three, four and five were not briefed on appeal and are, therefore, considered abandoned. Uniform RulesCourts of Appeal Rule 2-12.4.

ASSIGNMENT OF ERROR NO. 1:
By this assignment, defendant contends that the trial court erred in failing to suppress his out of court statements indicating he was guilty of the charged offenses. Defendant contends that Elijah Baker, the security guard, who apprehended him, qualifies as a law enforcement officer under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and the failure of Baker to advise him of his Miranda rights after his being taken into custody renders his out of court statements inadmissible. In support of his contentions, defendant relies on Baker's pre-trial testimony, at the hearing on the motion to suppress, that he is a duly commissioned deputy sheriff for the sheriff's office in Terrebonne Parish.
In State v. Pittman, 368 So.2d 705 (La. 1979), which involved a conversation between an accused and his employer, an honorary deputy sheriff, the Louisiana Supreme Court found that an admission made to the employer could not be said to be one made to a police officer. The Supreme Court specifically concluded that the fact that the employer was an honorary deputy was of no moment.
In Pittman the Supreme Court stated that:
The Lousiana statute on admissions and confessions requires that there be an affirmative showing on the part of the State that the confession was freely and voluntarily given, and that there was no influence of "fear, duress, intimidation, menaces, threats, inducements or promises" to bring about the alleged confession. LSA-R.S. 15:451. Federal and Louisiana cases require that there be a clear showing of procedural safeguards which would effectively guarantee that the constitutional privilege against self incrimination was secured to the accused when he was questioned while in the custody of the police. Miranda, supra; State v. Roach, 322 So.2d 222 (La.1975). If the interrogation and subsequent confession are in a non-custodial situation, the only showing which the State must make is whether the confession is free and voluntary, as the Miranda warnings apply only to custodial interrogations. State v. Glover, 343 So.2d 118 (La.1977). [emphasis added]
368 So.2d 707
We have carefully examined the testimony of the suppression hearing where Baker affirmatively responded to a question of defense counsel as to whether he is a commissioned deputy sheriff. We note that Baker in elaboration of his answer indicated that he was a "special deputy" and that he had been so designated for his protection. Shedding further light upon whether Baker's status was that of a law enforcement officer is trial testimony given by him on the predicate and in regard to the state's case in chief. In that testimony, he explained that in essence the special deputy status to which he referred amounted to a protection permit authorizing him to carry a pistol. As evidence thereof, he produced at trial a laminated identification card certifying that status, the content of which was read into the record by defense counsel. Baker freely acknowledged that he has never undertaken any special training either as a police officer or to attain the special deputy status, has no duties as a special deputy, has no police uniform and *653 wears civilian clothes and additionally that he does not know anything about Miranda rights.
Clearly, Baker's status as a special deputy did not elevate him to the status of a law enforcement officer required to trigger the applicability of Miranda warnings. State v. Pittman, supra. Therefore, the admission of guilt made by defendant to Baker herein was admissible, and accordingly the trial court's ruling was correct.
Moreover, even assuming arguendo that Baker was a policeman or was acting as an agent of a law enforcement agency, under the instant circumstances, defendant's statement, i.e., "I'm guilty", was an unsolicited and voluntary statement made at the moment of his apprehension by Baker and was made in response to Baker's order that he not make a move. The statement was thus made spontaneously and was not the product of custodial interrogation. Spontaneous and voluntary statements, not given as a result of police interrogation or compelling influence, are admissible in evidence without Miranda warnings even where a defendant is in custody. State v. Jones, 386 So.2d 1363 (La.1980)
This assignment has no merit.

ASSIGNMENT OF ERROR NO. 2:
By this assignment, defendant asserts that the trial court erred in denying his motion for a mistrial based upon a juror having spoken to a witness during a recess of the trial. Defendant argues that any contact or private conversation with a juror is presumptively prejudicial and in support thereof directs this Court's attention to State v. Charles, 377 So.2d 344 (La.1979). However, his reliance on that case to support his argument is misplaced.
In State v. Charles, the Supreme Court enunciated the applicable rule, regarding juror and witness contact, as follows:
In a criminal case, any private communication, contact or tampering directly or indirectly with a juror during a trial about the matter pending before the jury is deemed presumptively prejudicial. State v. Wisham, 371 So.2d 1151, 1153 (La.1979); State v. Marchand, 362 So.2d 1090, 1092 (La.1978); Remmer v. U.S., 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954). [Emphasis added]
377 So.2d at 345
Herein, the alleged improper contact occurred between Elijah Baker, a state witness, and Gwendolyn Chaisson, a juror, during a recess of the trial following delivery of opening statements. Prior to reconvening of the trial and out of the presence of the jury, defense counsel moved for a mistrial on the basis of the alleged improper contact between Baker and Chaisson. The assistant district attorney countered that the granting of a mistrial would be inappropriate on the basis that the contact did not involve a discussion of the instant case. He stated to the trial court that he had been informed of the contact between the juror and the witness, by the court reporter. At that time, he had Deputy Vernon Bourgeois bring Baker into an office where Baker told him he and the juror had not discussed the case, but that, nonetheless, he brought the matter to the attention of the court and defense counsel.
Thereupon, the trial court had Chaisson brought into the courtroom in order that she be questioned regarding the alleged improper contact with Baker. In response to questions by the trial court, Chaisson disclosed that she and Baker had spoken during the lunch hour. During the conversation, he told her how he had worked as a youngster on a sugar cane plantation, but did not discuss the case at all. Chiasson also stated that she had not previously known Baker. The trial court then allowed defense counsel to cross-examine Chaisson. Defense counsel acknowledged that he realized that Chaisson probably was not aware Baker would be a witness in the case and asked her whether the conversation with Baker would influence her decision in the case at all. Chaisson responded that it would not, and defense counsel stated he had no other questions.
*654 In denying the motion for mistrial, the trial court noted that the alleged improper conversation was not one concerning the instant case and concluded defendant was not prejudiced thereby. We find the trial court's denial of the motion to have been correct. The record reflects that the alleged improper contact consisted of an innocuous conversation, unrelated to the instant case, through which defendant could not conceivably have been prejudiced in any way.
This assignment is without merit.

ASSIGNMENT OF ERROR NO. 6:
By this assignment, defendant argues that as a first time felony offender his sentences are excessive and amount to cruel and unusual punishment and that suspended sentences with restitution to the victim would have been appropriate under the facts and circumstances of this case. Defendant asserts that no violence whatsoever was connected with the commission of the offenses and that he contacted the victim in order to make restitution.
Article 1, Section 20 of the Louisiana Constitution prohibits the imposition by law of excessive punishments. Further, the jurisprudence reflects that a sentence may violate a defendant's constitutional right against excessive punishment even though the sentence is within its statutory limits. State v. Jones, 412 So.2d 1051 (La.1982).
The trial judge has wide discretion to impose a sentence within the statutory limits. State v. Washington, 414 So.2d 313 (La.1982). This discretion is subject only to constitutional limitations on excessive sentence, and should not be disturbed in the absence of manifest abuse. State v. Burnette, 419 So.2d 835 (La.1982).
A sentence will be considered excessive if it is grossly out of proportion to the severity of the crime, or if it is nothing more than the purposeless and needless imposition of pain and suffering. State v. Sims, 410 So.2d 1082 (La.1982). To determine if a sentence is grossly disproportionate, the court must consider the punishment and the crime in light of the harm to society, and determine whether the penalty is so disproportionate that it shocks our sense of justice. State v. Pearson, 425 So.2d 704 (La.1982).
A trial judge's reasons in imposing sentence, as required by LSA-C.Cr.P. art. 894.1, are an important aid to this Court when reviewing a sentence alleged to be excessive. State v. Wade, 442 So.2d 681 (La.App. 1st Cir.1983), writ denied, 444 So.2d 1245 (La.1984).
Attempted simple burglary is punishable by a fine of not more than one thousand dollars or imprisonment with or without hard labor for not more than six years, or both. LSA-R.S. 14:27 and 62. In the instant case defendant was sentenced to three years imprisonment at hard labor on each count, to run concurrently, and no fine was imposed.
In its reasons for sentencing, the trial court noted it considered the provisions of LSA-C.Cr.P. art. 894.1 and particularly the factors relating to suspension of sentence and probation. The trial court opined that although defendant's conduct did not cause serious harm or threaten serious harm, there was no provocation for defendant's conduct and no substantial grounds tending to excuse or justify the conduct. The court noted that the victim did not facilitate the commission of the crimes in any way. The court further opined that it had reviewed defendant's criminal record and although his record is devoid of convictions, he has had numerous brushes with the law during his lifetime. The court opined that any suspension of sentence or probation of defendant would expose the public to an undue risk. The court noted defendant is certainly in need of correctional treatment in a custodial environment and that any lesser sentences would depreciate the seriousness of the offenses, carefully noting that two counts were involved.
We note, contrary to defendant's assertion, that the instant offenses did involve some degree of violence. We particularly note that defendant's act of heaving a piece of asphalt through the front window of the office was an act which one may reasonably *655 conclude exposed Elijah Baker to a risk of physical harm of being struck by the asphalt itself or broken glass which resulted upon impact. We further note the seriousness of the nature of the instant crimes and the inherent potential for violence between the perpetrator and the victim. Particularly we note the greatly enhanced potential for violence upon the occurrence of an actual confrontation between victim and perpetrator.
In regard to defendant's efforts to make restitution to the victims, the record reflects through defendant's own testimony, that beginning with the date of the offenses, April 25, 1985, he made no effort to contact the owner of the business or Baker in regard to making restitution, until he contacted Baker for that purpose on the Monday preceding his October 23, 1985, trial. The trial judge noted this belated attempt at restitution and gave it proper consideration.
We cannot say that the sentences imposed are excessive under the circumstances. The trial judge fully considered the range of sentencing alternatives and individualized the sentences to the particular defendant and the particular crimes involved. This assignment is without merit.
CONVICTION AND SENTENCE AFFIRMED.