649 So.2d 1034 (1994)
STATE of Louisiana
v.
Richard DOMANGUE.
No. KA 93 1953.
Court of Appeal of Louisiana, First Circuit.
December 22, 1994.
*1036 Martin S. Triche, Napoleonville, for defendant-appellant, Richard Domangue.
John D. Schoonenberg, Houma, for plaintiff-appellee, State of La.
Before EDWARDS, LeBLANC and PITCHER, JJ.
EDWARDS, Judge.
Richard Domangue was charged by bill of information with numerous counts, including in count 1, thirty counts of possession of untagged alligators and skins (violations of La.R.S. 56:261); in count 3, twenty-four counts of possession of improperly skinned alligator skins (violations of La.R.S. 56:261); and in count 4, one count of possession of and attempt to sell improperly skinned alligator hides (a violation of La.R.S. 56:261).[1] He pled not guilty and filed several motions to quash. The court granted the motion to quash the forty-one counts included in count 2 and denied the motions to quash the remaining counts. The state dismissed most of the counts included in counts 1 and 2 and dismissed all of counts 4 through 7. Later, in a supplemental bill of information, the state detailed the allegations of count 4 to charge defendant with intentionally possessing and attempting to sell an alligator hide which was not skinned in compliance with the regulations (in particular, the complete ventral skin surface of one front foot was not left attached to the skin of the leg). Prior to trial, the court indicated the case would be tried on only one count for each of counts 1, 3 and 4.
The jury found defendant not guilty on count 1 and guilty on counts 3 and 4. The court sentenced defendant on count 3 to serve a term of six months imprisonment in the parish jail and to pay a fine of $6000. The court suspended execution of the sentence and placed defendant on unsupervised probation for one year with the following *1037 special conditions: (1) commit no crime; (2) pay fine and costs; (3) pay $20 to law clerk fund for Parish of Terrebonne; and (4) pay $60 to criminal court fund. The court imposed the same sentence on count 4 and ordered that the sentences be served concurrently. Defendant has appealed, urging nine assignments of error.
In reviewing the record for patent error, we have noticed that the statutory citation included in the bill of information for Counts 3 and 4 is inaccurate. The state cited La.R.S. 56:261(1); however, the proper citation is La.R.S. 56:261(A). Such error is not reversible as defendant was not prejudiced. See La.C.Cr.P. art. 464. We also find that, after the state dismissed count 4, it filed an amended bill detailing charges against defendant in count 4. However, defendant was not arraigned on the supplemental bill. Such error is not reversible as defendant entered upon the trial without objecting to the error. See La.C.Cr.P. art. 555.

FACTS
On September 10, 1991, agents of the Enforcement Division of the Louisiana Department of Wildlife and Fisheries executed a search warrant at Domangue Fur House in Terrebonne Parish. The warrant was secured after defendant refused to give two of the agents an alligator he purchased from a hunter which had the hunting tag tied on rather than attached as required by regulations of the Department. The agents wanted the alligator for use in their investigation of the hunter. Defendant told the agents that Noel Kindler (a project coordinator with the Refuge Division of the Department of Wildlife and Fisheries) had told him it was legal for the hunter to tie the tag on if it fell off. When the agents returned to execute the search warrant, they discovered three alligator hides which did not have a tag, three loose tags which were not attached to any alligator, and forty-one hides which had the tag tied on. According to Lt. Roy Chauvin, the Enforcement Division supervisor for Terrebonne Parish, his agency's position is that it is a violation of the regulations to tie on the tag. One of the three hides which did not contain a tag formed the basis for the state's prosecution of defendant in count 1.
The agents also found twenty-four hides which the agents determined were not skinned in compliance with the regulations. One of these improperly skinned hides was introduced into evidence. It was identified as having tag no. 1019049 and measuring 9'5". Major Inspector Tom Candies of the Enforcement Division (a state witness) and Ted Joanen, a biologist with the Department and the programs manager for the alligator program in Louisiana (a defense witness), examined this hide and testified that it had not been skinned properly under the regulations. Three of the improperly skinned hides had a separate tag which read "no flap." According to defendant's son, who testified as a witness for the defense, whenever he was aware that a hide had been skinned improperly, he put a "no flap" tag on the hide. The improperly skinned hide which was introduced into evidence did not have a "no flap" tag.
Defendant, his son, and several other people were present when the agents arrived to search the facility. Defendant told the agents that he currently had approximately 900 hides at the facility and that all of them were being processed to sell to foreign markets. Defendant also said that agents from the Refuge Division were scheduled to inspect the hides on the following day in anticipation of shipment. The state also introduced correspondence and other records which showed that defendant, on behalf of Domangue Fur House, Inc., was negotiating with companies in Japan and France to sell the hides. According to Johnny Collins (an agent with the United States Fish and Wildlife Service) and Ted Joanen, alligators in Louisiana are protected under the CITES treaty (Convention on International Trade and Endangered Species) signed by the United States along with 120 other nations. In an effort to promote conservation of alligators, the CITES treaty requires the State of Louisiana to comply with certain requirements if it wants to have a hunting season for alligators. In compliance with the federal guidelines, the Louisiana Department of Wildlife and Fisheries adopted regulations *1038 which allow only licensed hunters to hunt for alligators and which require that a hunter immediately tag an alligator after it is caught. The regulations applicable on the date of the instant offenses also specified that the alligator must be skinned in a particular manner. The purpose of the skinning instructions (which were not given to the hunters until the season began) was to prevent hunters from hunting alligators prior to the opening of the season. A copy of the 1991 skinning instructions was posted on the wall in one of the rooms where alligator skinning took place at Domangue Fur House.

FAILURE TO CHARGE A CRIME IN COUNT 4
In reviewing the record for patent error, we have discovered the crime charged in count 4, attempting to sell an improperly skinned alligator hide, is not a crime under the statute. In one of the motions to quash, defendant argued count 4 should be quashed because La.R.S. 56:261 did not specifically prohibit the selling of improperly skinned alligators. Defendant has not renewed the issue on appeal. However, as the issue is evident from an inspection of the pleadings and proceedings we are required to review it. See La.C.Cr.P. art. 920(2).
A crime is that conduct which is defined as criminal in the Louisiana Criminal Code, or in other acts of the legislature or in the Louisiana Constitution. La.R.S. 14:7. The Constitution vests the legislative power exclusively in the legislature, and the determination and definition of acts which are punishable as crimes are purely legislative functions. See La. Const. art. III, § 1(A). The legislature cannot delegate to another branch its power to create and define criminal offenses. Where an enabling statute expresses a clear legislative policy and contains sufficient standards for the guidance of the administrative official empowered to execute the legislative will, the legislature may delegate to an administrative agency the administrative or ministerial authority to ascertain and determine the facts upon which the law is to be applied and enforced. However, the legislature cannot delegate to another branch its legislative power to create and define criminal offenses. State v. All Pro Paint & Body Shop, Inc., 93-1316 (La. 7/5/94), 639 So.2d 707, 711. Where the legislature has delegated to an administrative agency certain administrative or ministerial authority, the regulations promulgated by the agency pursuant to this authority may not exceed the authorization delegated by the legislature. See State v. Young, 623 So.2d 47, 50 (La.App. 1st Cir.), writ denied, 626 So.2d 1179 (La. 1993). See also State v. Davis, 448 So.2d 645, 650 (La.1984).
The statute upon which the state relies as its basis for count 4 at the time of the instant prosecution provided as follows:
A. No person shall take or possess the eggs of alligators, or alligators, or their skins in any parish of this state except as provided for by rules and regulations of the commission. Alligators or their skins shall be tagged as provided for by rules and regulations of the commission. The possession or sale of untagged alligators or their skins is prohibited. No person shall take, possess, or sell alligators or their skins under four feet in length, except as provided for by rules and regulations of the commission. Upon approval by the commission, a special permit shall be issued to take, possess, or sell the eggs of alligators or live alligators under four feet in length.
B. Violation of this Section is a class 7-A violation. La.R.S. 56:261 (as amended by 1991 La.Acts, No. 578, § 1; effective Sept. 6, 1991) (emphasis added).
Although this statute prohibits the "sale" of untagged alligators or skins and the "possession" of skins other than as provided by the regulations, the statute does not specifically prohibit the sale or attempt to sell hides which were not skinned in compliance with the rules and regulations. The state relies on the following regulations of the Department of Wildlife and Fisheries as its statutory support for count 4:
5. Special instructions will be issued to the holders of alligator hunting licenses immediately prior to the annual open season describing detailed methods regarding the skinning of alligators. Alligator farmers shall adhere to the annual skinning *1039 requirements when skinning farm raised alligators. Alligators not skinned in compliance with the established specific requirements shall be considered illegal and shall be confiscated by the Department.
6. It shall be a violation for any alligator hunter, alligator farmer, fur buyer, or fur dealer who knowingly attempts to sell an alligator hide that was not skinned in accordance with the established specific requirements. Violation of this part is a class 7A violation as described in Title 56.
Alligator Regulations, Sections (F)(5) & (6), 16 La.Reg. 1070 (Dec. 20, 1990) (to be codified at La.Adm.Code 76:V.701(F)). The state introduced a copy of the diagram which was attached to the 1991 skinning instructions. The explanatory note on the diagram specifies that the skinner should "[l]eave the complete ventral skin surface of one front foot (bottom skin of foot) completely attached to the skin of the leg."
While the regulations attempt to criminalize the attempt by a fur dealer (such as Domangue Fur House, see La.R.S. 56:8(48)) to sell an alligator hide which was improperly skinned, regulations of the Department of Wildlife and Fisheries may not create and define a crime and establish the penalty. The act alleged in count 4 is not an identifiable offense against the laws of this state. To the extent La.R.S. 56:261 delegates to the Department of Wildlife and Fisheries the authority to promulgate regulations, the regulation relied upon by the state in support of count 4 has exceeded that authority. Accordingly, we reverse defendant's conviction and sentence on count 4, and it is not necessary for us to review the assignments of error insofar as count 4 is concerned.[2]

SUFFICIENCY OF THE EVIDENCE
In two related assignments of error (assignments of error numbers 2 and 3), defendant contests the sufficiency of the state's evidence that he knowingly possessed an improperly skinned alligator hide.[3] In reviewing claims challenging the sufficiency of the evidence, this Court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). See also La. C.Cr.P. art. 821(B); State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988).
The statute under which defendant was prosecuted in count 3 provides, in pertinent part: "No person shall take or possess ... alligators, or their skins ... except as provided for by rules and regulations of the commission." La.R.S. 56:261(A) (as amended by 1991 La.Acts, No. 578, § 1; effective Sept. 6, 1991). The bill of information specifically charged defendant with possession of improperly skinned alligator skins. As discussed in the previous section, the alligator regulations require that all alligators be skinned in accordance with the annual skinning instructions. Alligator Regulations, Sections (F)(5) & (6), 16 La.Reg. 1070 (Dec. 20, 1990) (to be codified at La.Adm.Code 76:V.701(F)). The explanatory note on the diagram which accompanied the 1991 skinning instructions specifies that the skinner should "[l]eave the complete ventral skin surface *1040 of one front foot (bottom skin of foot) completely attached to the skin of the leg."
Thus, the state was required to prove (1) that defendant possessed the skin of an alligator which was not skinned in compliance with the regulations, and (2) that defendant had general intent to commit the offense. See generally State v. Husband, 437 So.2d 269, 271 (La.1983); State v. Badie, 626 So.2d 46, 47 (La.App. 1st Cir.1993) (summarizes the elements of the offense of possession of a firearm by a convicted felon, which contains language similar to the instant offense). Actual physical possession of the hide is not required. Constructive possession satisfies the possessory element of the offense. Constructive possession is a legal term describing the situation in which a person who is not in actual physical possession of an object can nevertheless be considered in legal possession of the item if it is subject to his dominion and control. State v. Hills, 451 So.2d 1346, 1347 (La.App. 1st Cir.), vacated in part on other grounds, 457 So.2d 1183 (La.1984). General intent is defined as being "present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." La.R.S. 14:10(2). In general intent crimes, criminal intent necessary to sustain a conviction is shown by the very doing of the acts which have been declared criminal. State v. Holmes, 388 So.2d 722, 727 (La.1980). Though the existence of intent is a question of fact, it need not be proven as a fact but may be inferred from the circumstances of the transaction. State v. Liggett, 363 So.2d 1184, 1186 (La.1978).
In closing argument, defense counsel conceded that the alligator hide bearing tag no. 1019049 was skinned improperly. Major Inspector Candies and Ted Joanen both testified that the hide was improperly skinned. Thus, we must decide if the state presented sufficient evidence that defendant possessed the improperly skinned hide with the requisite intent.
The state's evidence did not explain defendant's connection with the company, other than indicating that defendant was present when the search was conducted. The defense introduced copies of licenses issued to Domangue Fur House, Inc., which listed defendant as being the company's president. Testifying as a defense witness, defendant's son, Archie Domangue, said the company had been in business for about thirty years and was a licensed resident fur dealer, authorized to buy and sell alligator hides. Archie also said his father's role in the business was in the office where he paid the hunters for the skins, distributed the cash, and made offers to resell the hides. Archie, as the vice president and manager of the company, was in charge of the "outside." He helped the hunters unload the alligators, checked the hunters' licenses, made sure the alligators were tagged, measured the alligators, prepared the purchase tickets, and brought the tickets to defendant.
Archie estimated that in an average year the business bought and resold between 5000 and 8000 alligators. Most of the alligators were purchased whole and were skinned at the facility. Approximately 90 employees worked for the company, including about 20 to 25 skinners who worked 18 to 20 hours each day during the first ten to twelve days of the alligator hunting season. Ted Joanen, the biologist from the Department of Wildlife and Fisheries who was programs manager for the alligator program in Louisiana, explained that approximately 75 percent of the 25,000 alligators killed during the alligator season in Louisiana are killed during the first ten days of the season. In 1991, the season opened on August 31. Joanen also indicated that 75 to 80 percent of the alligators taken are sold whole to the dealers because of the importance of selling the meat.
Archie testified that he instructed the skinners in the proper technique to use in skinning the alligators and that he put pictures "all over the wall to indicate such." During the search, a copy of the diagram issued with the 1991 skinning instructions was found taped on the wall. According to Archie, there was no advantage for skinners to skin the alligator improperly because they knew it would be a loss for the company. Whenever *1041 he became aware a hide had been skinned improperly he set the hide aside or put a "no flap" tag on it. Because of the number of skinners, it was impossible for him to watch each skinner. He indicated that some of the skinners were honest and would let him know about a mistake. However, because the skinners knew he would "rake them over about it" some of them did not tell him when they skinned an alligator improperly. Joanen testified that the 1991 skinning instructions (which were last used in 1972) were difficult instructions because cartilage and ligament make the foot of an alligator hard to skin. According to Joanen, the Department realized this and decided that any attempt by the skinner to get the bottom part of the pad on the front foot would be considered acceptable. However, Major Inspector Candies maintained that there was no judgment call involved and that either an alligator was skinned properly or it was not.
The state presented no evidence concerning where the improperly skinned hide (tag no. 1019049) was found. According to Archie, the alligator was sold whole to the company on September 6, 1991, and would have been skinned at the facility. The hunter confirmed that he sold the alligator whole. The hide was 9'5" and, thus, more valuable than shorter hides. It did not have a "no flap" tag; and only three of the improperly skinned alligators found during the search had such a tag.
During the search, defendant told the agents he was in the process of selling all of the hides he had at that time to a foreign company. Correspondence and other records of the company showed defendant was negotiating with companies in Japan and France. The Refuge Division was scheduled to inspect the hides on the following day in anticipation of the shipment. Joanen and Noel Kindler (the project coordinator for the Fur and Refuge Division) testified that their division inspects each alligator hide prior to shipment[4] and that defendant had a history of cooperating with the Department during these inspections. During the inspection, the Fur and Refuge agents check the tag and the manner of skinning on every alligator. If they find an improperly skinned hide, they seize the hide but do not issue any citations. According to Joanen, defendant did a good job of following the rules and regulations issued by the agency. Joanen testified that it would be impossible for defendant to sell an improperly skinned hide without his division first inspecting it. Both Joanen and Archie Domangue said defendant knew each hide would be inspected and knew an improperly skinned hide would be confiscated. Domangue Fur House regularly set aside any alligator hides which were noticed to have been skinned improperly. Joanen maintained that the Department instructed hunters and skinners who had skinned an alligator improperly to either turn the skin in at that time or wait until the Refuge Division picked up the hide at the end of the season. Archie testified that, although an improperly skinned hide could not be sold and would be confiscated, his company processed it like a regular hide so it would not rot. He did not want the hide to rot because he was required by the Department to account for each tag.[5] In addition to the inspection by the Fur and Refuge Division, agents with the United States Fish and Wildlife Service also inspected each shipment before export. During this inspection, only about five percent of the hides would be individually inspected by the federal agents.
Under these facts, we conclude the state failed to prove the elements of the offense. Merely because defendant was an officer in the business does not make him criminally responsible for the actions of all of his employees. See State v. Chapman Dodge Center, Inc., 428 So.2d 413, 416 (La.1983). The state failed to prove that defendant constructively possessed the improperly skinned hide. The state also presented no testimony to contradict the defense evidence which showed the alligator was purchased whole after the season opened and was later skinned at defendant's facility. All indications *1042 are that defendant's business made genuine efforts to comply with the skinning requirements and that the improper skinning at issue in this case was the result of accident or mistake. The regulations in effect on the date of the search did not instruct fur dealers in any procedure to follow in the event a hide is skinned improperly. However, the dealers were subject to inspections by the Fur and Refuge Division of the Department before exporting the hides, and agents from that division told the dealers it was acceptable to hold any improperly skinned hides in anticipation of that final inspection. According to Archie Domangue's testimony, the business relied on these representations in deciding to hold any improperly skinned hide. See generally Cox v. Louisiana, 379 U.S. 559, 569-71, 85 S.Ct. 476, 483-84, 13 L.Ed.2d 487 (1965); La.R.S. 14:16; W. LaFave & A. Scott, Substantive Criminal Law § 5.1(e)(3) (West 1986 & Supp.1994). Throughout the trial, it was apparent the Enforcement Division and the Fur and Refuge Division (although both within the Louisiana Department of Wildlife and Fisheries) did not cooperate with each other and held differing opinions about when a violation occurred and what the agency's response should be to that violation. The approach taken by the Enforcement Division in this case would result in a violation occurring the instant a skinner makes a mistake. Agents from the Enforcement Division also apparently take the position that even the "unknowing" possession by a dealer of an improperly skinned hide is criminal. We have concerns about the constitutionality of a statute which would criminalize the unknowing possession of an improperly skinned hide. Cf. State v. Brown, 389 So.2d 48, 50-51 (La.1980). In any event, because the state did not present evidence that defendant possessed the hide, we reverse the conviction for count 3 and order defendant discharged. Because of our ruling on these assignments of error, it is not necessary for us to review the other assignments.
CONVICTIONS AND SENTENCES REVERSED; DEFENDANT ORDERED DISCHARGED.
NOTES
[1] Domangue's Fur House, Inc., is listed as a codefendant on the bill of information. The record does not indicate the disposition of the charges against the corporation.
[2] Although the state phrased count 4 as including both the possession of and the attempt to sell improperly skinned alligator hides, at trial the state relied on only one particular hide (tag no. 1019049) as its support for both count 3 (possession of improperly skinned alligator skins) and count 4. The state focused upon the attempt to sell as being the offense charged in count 4. To prosecute defendant in two counts for possession of the same improperly skinned alligator hide would be a violation of the prohibition against double jeopardy.
[3] In assignment of error number 4, defendant attacks the sufficiency of the state's proof that he specifically intended to sell the improperly skinned hide (as charged in count 4). Because we find the act alleged in count 4 is not an identifiable offense and have reversed defendant's conviction accordingly, it is not necessary for us to review the merits of the fourth assignment. In assignment number 2, defendant asserts the court erred when it denied the motion for new trial; and in assignment number 3, defendant maintains the court erred when it denied the motion for post verdict judgment of acquittal. Defendant briefs assignments 2, 3, and 4 together and argues both that the state failed to prove he knowingly possessed the hide and that the state failed to prove he attempted to sell the hide.
[4] See also Alligator Regulations, Section (D)(10), 16 La.Reg. 1070 (Dec. 20, 1990) (to be codified at La.Adm.Code 76:V.701(D)).
[5] See also Alligator Regulations, Section (K)(1), (5)(a) & (6), 16 La.Reg. 1070 (Dec. 20, 1990) (to be codified at La.Adm.Code 76:V.701(K)).