674 So.2d 489 (1996)
STATE of Louisiana
v.
Herman ROSS.
No. 95 KA 1240.
Court of Appeal of Louisiana, First Circuit.
May 10, 1996.
*491 Mark D. Rhodes, Houma, for Plaintiff-Appellee, State of Louisiana.
Jerri G. Smitko, Houma, for Defendant-Appellant, Herman Ross.
Before CARTER, PITCHER and CRAIN,[1] JJ.
HILLIARY J. CRAIN, Judge Pro Tem.
Herman Ross was charged by amended bill of information with simple burglary, a violation of La.R.S. 14:62.[2] He pled not guilty and, after trial by jury, was convicted on the charged offense. The trial court sentenced him to serve a term of eight years imprisonment at hard labor with credit for time served. Defendant has appealed, urging seven assignments of error.

Facts
Defendant was charged with burglarizing the home of Aaron Celestine and stealing two video cassette recorders (VCRs). On January 19, 1993, defendant allegedly broke a window to gain entry into the home of Mr. Celestine, where he proceeded to steal the VCRs. Ultimately, Mr. Celestine encountered an individual trying to sell one of the VCRs. The police were notified. The individual stated that he had received the VCR from defendant. Defendant was arrested and gave a statement to the police, and the second VCR was recovered as a result.

Assignments of Error Numbers 1 and 2
In these assignments of error, defendant contends that the trial court erred by failing to grant challenges for cause to two prospective jurors, viz., Ms. Sylvia Kimble and Mr. Perry LeBlanc.
A trial court is vested with great discretion in ruling on a challenge for cause, and its ruling will not be disturbed unless a review of the voir dire as a whole indicates an abuse of that discretion. State v. Allen, 380 So.2d 28, 30 (La.1980); State v. McLean, 525 So.2d 1251, 1254 (La.App. 1 Cir.), writ denied, 532 So.2d 130 (La.1988).
La.C.Cr.P. art. 797 provides, in pertinent part, as follows:
The state or the defendant may challenge a juror for cause on the ground that:
. . . . .
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
. . . . .
(4) The juror will not accept the law as given to him by the court ...
In State v. Lewis, 391 So.2d 1156, 1158 (La.1980), the Louisiana Supreme Court stated that:
[S]ervice on a criminal jury by one associated with law enforcement duties must be closely scrutinized and may justify a challenge for cause, although such association does not automatically disqualify a prospective juror.
*492 It is well-settled that relationship to a law enforcement officer is not, of itself, grounds for a challenge for cause. Rather, the question presented is whether or not the prospective juror could assess the credibility of each witness independent of his or her relationship with members of law enforcement. State v. Collins, 546 So.2d 1246, 1253 (La.App. 1 Cir.1989), writ denied, 558 So.2d 599 (La.1990).
A trial court has broad discretion in ruling on challenges for cause. State v. Welcome, 458 So.2d 1235, 1241 (La.1983), cert. denied, 470 U.S. 1088, 105 S.Ct. 1856, 85 L.Ed.2d 152 (1985). A refusal by a trial court to excuse a prospective juror on the ground that he is not impartial is not an abuse of discretion where, after further inquiry or instruction, he has demonstrated a willingness and ability to decide the case impartially according to the law and the evidence. State v. Copeland, 530 So.2d 526, 534 (La.1988), cert. denied, 489 U.S. 1091, 109 S.Ct. 1558, 103 L.Ed.2d 860 (1989).
We now review the voir dire responses given by Ms. Kimble and Mr. LeBlanc and the trial court's rulings, denying the defense challenges for cause of those individuals.

Sylvia Kimble
During questioning by the trial court, Ms. Kimble stated that her husband was a cadet at the Louisiana State Police Academy and that he previously had worked for the Terrebonne Parish Sheriff's Department. Elaborating, Ms. Kimble stated that she knew several deputies with the Sheriff's Department; however, she did not recognize any of the names of the witnesses in this case. When the court inquired whether she could listen to all of the evidence and decide the case based on that evidence without prejudging the case, she responded that she could. Further, she admitted that it was possible for a Sheriff's Deputy, excluding her husband, to lie. No follow-up questions were asked by either the state or the defense.
In denying the defense challenge for cause of Ms. Kimble, the trial court rejected the defense contentions that Ms. Kimble should be excused based on her relationship with her husband. After carefully reviewing the voir dire testimony of Ms. Kimble, we find no abuse of discretion of the trial court with regard to the denial of the challenge for cause of this prospective juror.

Perry LeBlanc
During questioning by the defense, counsel for defendant posed a hypothetical situation wherein the state only called one witness, a police officer, introduced a VCR and rested. Counsel inquired of the panel, "What happens? What does your verdict have to be?" Mr. LeBlanc replied, "Guilty." On this basis, the defense challenged Mr. LeBlanc for cause. Later, during questioning by the defense, Mr. LeBlanc stated that he would not hold it against the defendant if he did not testify. No further questions were asked of Mr. LeBlanc.
In denying the defense challenge for cause of Mr. LeBlanc, the trial court noted that Mr. LeBlanc had rehabilitated himself after his comment. The court felt that Mr. LeBlanc obviously was kidding around in response to jokes made by the attorneys. After carefully reviewing the voir dire testimony of Mr. LeBlanc, we find no abuse of discretion of the trial court with regard to the denial of the challenge for cause of this prospective juror. Thus, these assignments of error lack merit.

Assignments of Error Numbers 3 and 4
In these assignments of error, defendant cites as error the trial court's failure to require the prosecutor to state a racially neutral reason for exercising a peremptory challenge on prospective juror Charles Wilson, Sr. Further, defendant contends the trial court erred in failing to find a pattern of discrimination in the exercise of the state's peremptory challenges in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
At the time of defendant's Batson challenge, the state had accepted four other prospective jurors without challenge. Mr. Wilson, the first juror peremptorily challenged by the state, was apparently black, and at least one of the accepted jurors also *493 was black.[3] Mr. Wilson previously had been challenged for cause by the state for being "less than honest" with the court, when he did not reveal that his son had been arrested and convicted of a crime when questioned by the court. Ultimately, the trial court denied the challenge, because the state did not pursue this line of questioning. Following defendant's Batson objection, the trial court ruled that there was "no showing of racial bias at this point." The state stated for the record its reasons[4] for striking Mr. Wilson:
For the record so that the record is clear, I appreciate the court's ruling but I wouldso that my thoughts can be recorded for posterity note that Mr. Wilson sat on a rape case where he voted not guilty. And he indicated that his son had been in fact a criminal defendant in this very courtroom.
Defendant submits that he made a prima facie showing, because the trial court's decision, denying the state's challenge for cause, suggests that the state's exercise of a peremptory challenge on Mr. Wilson was part of a systematic exclusion of members of the black race from the jury. No additional Batson objections were made by the defense to other peremptory challenges by the state after the trial court's ruling on the Batson objection made by defendant to the peremptory challenge of Mr. Wilson; thus, we will consider only the challenge of Mr. Wilson.
In Batson, the United States Supreme Court adopted a three-step analysis to determine whether or not the constitutional rights of prospective jurors have been infringed by impermissible discriminatory practices:
First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race.[5] Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.
Hernandez v. New York, 500 U.S. at 358-359, 111 S.Ct. at 1866 [citations omitted; footnote ours].
"The second step of this process does not demand an explanation that is persuasive, or even plausible." Purkett v. Elem., ___ U.S. ___, ___, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995). Because a trial judge's findings pertaining to purposeful discrimination turn largely on credibility evaluations, such findings ordinarily should be entitled to great deference by a reviewing court. Batson v. Kentucky, 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21. Reasons offered to explain the exercise of peremptory challenges should be deemed race-neutral unless a discriminatory intent was inherent in those reasons. See Hernandez v. New York, 500 U.S. at 359, 111 S.Ct. at 1866.
Our careful review of the entire record of the voir dire proceedings fails to disclose any error in the ruling of the trial court that the defense failed to establish a prima facie case of discrimination. Further, even if we were to find that a prima facie case was established by defendant, he has failed to carry his burden of proving purposeful discrimination in light of the voluntary, race-neutral reasons offered by the state. Purkett v. Elem., ___ U.S. ___, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995).
These assignments lack merit.

*494 Assignments of Error Numbers 5 and 6
In these assignments, defendant maintains that an alleged statement given to the police by defendant should not have been admitted because it was not freely and voluntarily given. Further, the defense contends that, because defendant cannot read, the jury should not have viewed state's exhibit 3, an Advice of Rights form, or state's exhibit 4, the statement given to the police.
Officer Richard Belanger with the Houma Police Department testified at a pretrial hearing on a motion to suppress the statement and at trial.[6] He stated that he advised defendant of his constitutional rights, that defendant was not threatened or coerced or intimidated in any way, and that defendant freely and voluntarily signed the Advice of Rights form. Likewise, Officer Belanger testified that, after defendant was advised of his rights, he decided to give a statement, which Officer Belanger typed as defendant gave it. Defendant was not promised anything to give the statement. Further, defendant was not threatened, forced or coerced or intimidated in any way prior to giving his statement. Likewise, no promises were made that the charges against defendant would be dropped if the VCRs were recovered. Officer Belanger informed the court that, before he started typing, he had defendant write his initials on the document on which the statement was to be typed and again write his initials on the finished product in order to insure that nothing was added to or taken out of the statement. Defendant then wrote his name on the document. He also read the statement to defendant.
Defendant, who testified at the hearing on the motion to suppress but not at trial, stated that he did not admit burglarizing Mr. Celestine's house and, although he was advised of his constitutional rights, he alleged that he did not give any statement.
Defense counsel maintains that this statement should have been taped, but Officer Belanger stated that it was not standard procedure to tape record a confession. Further, counsel suggests that, because defendant could not read, he could not verify the correctness of the statement as typed by Officer Belanger. However, Officer Belanger testified that there were facts contained in the statement that he did not know before defendant confessed. Specifically, he had no idea where the second VCR was. Based on the statement, the second VCR was recovered.
It is well settled that before a confession or inculpatory statement can be introduced into evidence, the state has the burden of affirmatively showing that it was made freely and voluntarily, and not influenced by fear, duress, intimidation, menaces, threats, inducements, or promises. La.R.S. 15:451; State v. Golmon, 536 So.2d 481, 486 (La.App. 1 Cir.1988), cert. denied, 493 U.S. 832, 110 S.Ct. 104, 107 L.Ed.2d 67 (1989). The trial court's determination that the state has met its burden of proof with regard to voluntariness is entitled to great weight. Furthermore, the determination of a witness's credibility on this issue, being a function of the trier of fact, is entitled to great weight. State v. Whitaker, 489 So.2d 998, 1001 (La.App. 1 Cir.), writ denied, 494 So.2d 324 (La.1986).
In admitting the statement given by defendant, the trial court obviously believed the testimony of Officer Belanger and rejected the testimony of defendant. In doing this, the trial court did not abuse its discretion. See State v. Messiah, 538 So.2d 175, 178 (La.App. 1 Cir.1988), cert. denied, 493 U.S. 1063, 110 S.Ct. 880, 107 L.Ed.2d 963 (1990). Our careful review of the record of the suppression hearing and the trial transcript convinces us that the statement given by defendant was freely and voluntarily given. Thus, we find no merit in these assignments of error.

Assignment of Error Number 7
In his final assignment of error, defendant contends that it was error for the trial court to reject a defense request for a *495 mistrial following an unsolicited contact between a juror and a witness.
The record reveals that following a break, Ms. Jones, one of the jurors, reported to the trial court that a witness approached her during the break and asked her what she thought about the case. She stated to the court that she replied that she really did not want to be there. The trial court inquired whether she told the witness anything about what she thought other than that she did not want to be there. She replied that she did not. Initially, neither the state nor the defense asked any further questions about the matter. After the defense moved for a mistrial, the following exchange took place:

BY MR. RHODES:
Q. Miss Jones, that statement made by that young man would not detract from your ability to judge this case solely on the facts and the law presented to you; is that a fair statement?
A. No.
Q. It has no effect on you at all, does it; you just felt that it was important and so
A. Yes.
Q. Well, you should have. But it has no bearing on your sitting as a juror; is that right?
A. No.
Q. Okay.
BY THE COURT:
Q. Did he disclose any other evidence to you or he just asked you
A. No.
Q. what you thought about the case?
A. Justjust what I thought about it.
Q. Okay. And you just told him that you didn'tdidn't want to be here
A. That's all I told him.
In State v. Charles, 377 So.2d 344, 345 (La.1979), the Louisiana Supreme Court enunciated the applicable rule, regarding juror and witness contact, as follows:
In a criminal case, any private communication, contact or tampering directly or indirectly with a juror during a trial about the matter pending before the jury is deemed presumptively prejudicial. [citations omitted]
A juror's misconduct is not a ground for automatic mistrial. Prejudice must also be established. State v. Day, 414 So.2d 349, 350 (La.1982).
In the instant case, the record reflects that the alleged improper contact consisted of an innocuous conversation, through which defendant could not conceivably have been prejudiced in any way. See State v. Hawkins, 496 So.2d 643, 647-648 (La.App. 1 Cir.1986), writ denied, 500 So.2d 420 (La.1987); State v. Guidry, 496 So.2d 650, 653-654 (La.App. 1 Cir.1986), writ denied, 500 So.2d 420 (La. 1987). Defendant failed to show any prejudice, but argues that it should be presumed. Even assuming, arguendo, that prejudice should be presumed, it was rebutted by the subsequent colloquy between the court and Ms. Jones.
Thus, this assignment has no merit.

Patent Error
In reviewing the record for patent error, we have noticed that the statutory citation included in the amended bill of information is inaccurate. The state cited La.R.S. 14:62.2; however, the proper citation, following the amendment to the bill of information, is La.R.S. 14:62. Such error is not reversible, as defendant was not prejudiced. See La.C.Cr.P. art. 464. State v. Domangue, 93-1953 p. 3 (La.App. 1 Cir. 12/22/94), 649 So.2d 1034, 1037.
Conviction and Sentence AFFIRMED.
NOTES
[1] Judge Hillary J. Crain, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The original bill of information charged the defendant with simple burglary of an inhabited dwelling, a violation of 14:62.2. On the day of trial, the prosecutor amended the bill of information by deleting the inhabited dwelling reference, reducing the charge to simple burglary. The court minutes do not indicate that the defendant was rearraigned after the prosecutor amended the bill of information. Nevertheless, failure to rearraign the defendant was waived, because he did not object before trial. La.C.Cr.P. art. 555.
[3] The record reveals that the voir dire examination of the prospective jurors does not include the race of all of the prospective jurors.
[4] We note that "[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." Hernandez v. New York, 500 U.S. 352, 359, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991). However, the situation in the instant case is distinguishable, because the trial court ruled that defendant had not established a prima facie case of discrimination, before the prosecutor offered his race-neutral explanation.
[5] The scope of a Batson claim has been extended to other "suspect classifications," such as gender. See J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, ___, 114 S.Ct. 1419, 1428, 128 L.Ed.2d 89 (1994).
[6] We note that, in reviewing whether or not the ruling on the motion to suppress defendant's statement was correct, we are not limited to the evidence adduced at the hearing on the motion. We may consider all pertinent evidence given at the trial of the case. State v. Chopin, 372 So.2d 1222, 1223 n. 2 (La.1979).