700 So.2d 1016 (1997)
STATE of Louisiana
v.
Ellis COUSIN.
No. 96 KA 2035.
Court of Appeal of Louisiana, First Circuit.
September 23, 1997.
Walter Reed, District Attorney, Covington, Terry M. Boudreaux, Gretna, for State.
Frank Sloan, Covington, for Ellis Cousin.
*1017 Before LeBLANC and FITZSIMMONS, JJ., and CHIASSON,[1] J. Pro Tem.
LeBLANC, Judge.
Ellis Cousin was charged by amended bill of information[2] with two counts of possession of cocaine with intent to distribute, in violation of La. R.S. 40:967(A)(1). Defendant originally pled not guilty. After the trial court denied defendant's motion to suppress evidence, defendant pled guilty, reserving his right under State v. Crosby, 338 So.2d 584 (La.1976), to appeal the trial court's ruling on the motion to suppress. The trial court sentenced defendant to serve a term of twenty years with the Department of Corrections on each of the two counts, to be served concurrently and with credit for time served. Defendant filed a motion to reconsider sentence, which was denied by the trial court. Defendant has appealed, arguing two assignments of error.[3] For the reasons which follow, we affirm defendant's convictions and sentences.

Facts
On December 29, 1995, Sergeant Jessie Simon with the Narcotics Division of Slidell Police Department and his partner were driving northbound on Sergeant Alfred Drive, when they observed defendant driving a vehicle which was headed southbound. As the vehicles passed each other, the officers observed defendant drinking "from a large bottle of beer." The officers proceeded to stop defendant for violating the Slidell municipal ordinance against open containers. At first defendant accelerated and ran a stop sign, but he eventually pulled over. Sgt. Simon observed a beer bottle was between defendant's legs. Defendant stated that he did not have a driver's license, because it was expired. At this time, defendant was arrested for having an expired license and an open container. Defendant's car was impounded, and an inventory search was conducted. During the inventory search, a bag containing what appeared to be approximately 15 rocks of crack cocaine, weighing 2.6 grams, was found underneath the driver's seat. Upon seeing the bag, defendant remarked, "just that little bit; you're going to charge me with that just little bit."
On January 12, 1996, Sgt. Simon received information from a confidential informant, who was known to be reliable, that defendant was living at his girlfriend's grandmother's apartment and that he had approximately one ounce of cocaine hidden in a locked closet in the hallway. Sgt. Simon verified the name and address of the occupants of the apartment, as well as verifying that defendant was banned from the premises by the housing authority. After attempting to reach a local judge in order to obtain a search warrant, Sgt. Simon proceeded to the apartment at approximately 1:15 a.m. in order to secure the premises until permission to search was granted or until a search warrant could be obtained. Sgt. Simon explained to the occupant of the apartment, Miss Florence Cooper, the reason he was there. Miss Cooper woke defendant, and she signed a consent to search form.
After the form was signed, defendant requested to speak with Sgt. Simon in private. The officer advised defendant of his rights, at which time defendant stated "look you got *1018 me, I need some help." Defendant agreed to cooperate, opened the closet, showed the officer where the key was and stated that there was $190.00 cash on the top shelf. A total number of 53 rocks of crack cocaine, weighing 7.6 grams, was recovered.

Motion to Suppress
In his first argument, defendant contends that the trial court erred in denying defense motions to suppress the evidence seized on December 29, 1995, because the inventory search was, in fact, a pretext to search for illegal drugs. Further, defense counsel argues that inculpatory remarks made by defendant on December 29, 1995, should also be suppressed. This argument is addressed to count one of the information. The January 12, 1996 arrest and conviction are not at issue.
The state maintains that the inventory search was a valid means of protecting defendant's property in an unsafe environment. Further, the state maintains that defendant failed to brief his contention that the inculpatory statement should have been suppressed; thus, the state argues that this argument should be considered abandoned. In any event, the state argues that defendant's comment was spontaneous, and no Miranda warning was necessary.
The Fourth Amendment to the United States Constitution and La. Const. art. I, § 5, protect people against unreasonable searches and seizures. However, the right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by La.C.Cr.P. art. 215.1, as well as by both federal and state jurisprudence. State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). Reasonable suspicion for an investigatory detention is something less than probable cause and must be determined under the facts of each case by whether or not the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. State v. Pautard, 485 So.2d 909, 911 (La.1986). The right to make an investigatory stop and question the particular individual detained must be based upon reasonable suspicion to believe that he has been, is, or is about to be engaged in criminal conduct. State v. Pautard, 485 So.2d at 911.
In the instant case, the record reflects that defendant was observed drinking from a beer bottle while driving. The officer's observation of this violation of a municipal ordinance provided a sufficient basis to initiate an encounter in this case. Upon verifying that the open container ordinance had been violated and learning that defendant had an expired license, Sgt. Simon had sufficient cause to take defendant into custody. The circumstances of this case, including the fact that Sgt. Simon had made the decision to take defendant into custody for the open container violation and for having an expired license prior to conducting any search, reveal that defendant was not stopped on any pretextual basis.
A search conducted without a warrant is per se unreasonable under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions. Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973). Both the United States Supreme Court and the Louisiana Supreme Court have recognized a true inventory search to be an exception to the warrant requirement. State v. Brumfield, 560 So.2d 534, 536 (La. App. 1st Cir.), writ denied, 565 So.2d 942 (1990) (and cases cited therein). The justification for an inventory search is ostensibly to protect the occupant against loss of his property or to protect the law enforcement agency against the occupant's claim for failure to guard against such a loss. A valid inventory search is conducted not on probable cause to secure evidence, but merely to inventory the vehicle's contents in order to safeguard them, as an incident to the vehicle's necessarily being taken into lawful police custody. State v. Brumfield, 560 So.2d at 536.
An inventory search may not be used as a subterfuge for rummaging through the arrestee's vehicle without a warrant for the primary purpose of seizing evidence. State v. Brumfield, 560 So.2d at 536. Several factors have been considered by Louisiana courts to *1019 determine whether a true inventory search has been conducted:
(1) the vehicle could not have remained safely at or near the place it was stopped; (2) the search was not conducted in the field; (3) the tow truck was called before the search commenced; (4) formal impoundment procedures were followed; (5) the vehicle operator was asked if he consented to a search, if the car contained valuables, or if he would consent to the agency's failure to afford him the protection of an inventory search; (6) arrangements were made for someone designated by the operator to take possession or protective custody of the vehicle for him.
State v. Brumfield, 560 So.2d at 536-537.
In the instant case, there is no indication that the inventory search was a pretext to search for illegal drugs. Further, Sgt. Simon specifically stated that he was not "pulling him over looking for it." The record reveals that no one was riding with defendant and that the vehicle was stopped in an unsafe area in a private driveway. There is no indication in the record of the owner of this driveway; nor is there any indication that defendant could have left the vehicle in this driveway. Sgt. Simon testified that he called a tow truck to impound the vehicle for safekeeping. Thereafter, Det. Kevin Simon commenced the inventory search. Sgt. Simon testified that it was department policy to "log everything of value in that vehicle and put it on a wrecker sheet and have the wrecker driver sign for it so that if anything comes up missing it's the wrecker driver's responsibility[.]" Although the search was conducted in the field, defendant was not asked whether or not he consented to a search of the vehicle. However, the absence of a few of the elements to be considered in evaluating whether or not a true inventory search was conducted should not necessarily invalidate the inventory. State v. Brumfield, 560 So.2d at 537.
There is no indication in the record that the instant search was anything other than an inventory search. Furthermore, there is no indication that the alleged inculpatory statement was obtained in violation of defendant's constitutional rights. In fact, the statement was a spontaneous comment by defendant, not an elicited response to custodial interrogation. Thus, defendant's argument is without merit.

Excessive Sentence
In his final argument, defendant maintains that the sentences imposed by the trial court were excessive. Specifically, defendant argues the sentences imposed were grossly out of proportion to the severity of the crimes.
Defendant's penalty exposure for the instant offenses was imprisonment at hard labor for not less than five years nor more than thirty years for each offense; in addition he could have been sentenced to pay a fine of not more than fifty thousand dollars for each offense. See La. R.S. 40:967(B)(1). Herein defendant received concurrent sentences of twenty years and no fine.
During the Boykin hearing, the following colloquy occurred between the trial court and defendant:
BY THE COURT:
You're pleading guilty pursuant to an understanding you have of the sentence which the Court wants to go over with you closely to make doubly sure you understand it and it is acceptable with you.
The sentence is as follows. You'll be sentenced to serve a period of two years  of twenty years with the Department of Corrections on each of the two counts. They will be run concurrent, which means at the same time. There will be no multiple [offender] bill filed against you. It will also run concurrent with any time you will have to serve as a result of the parole violation and this is tendered to the Court under what we call the Crosby plea which means you have a right to appeal to the higher Court this Court's rulings on any motion which you just heard your attorney speak of.
Is that your understanding of the sentence?
BY MR. COUSIN:
Yes, sir.
BY THE COURT:
Do you understand it?

*1020 BY MR. COUSIN:
Yes, sir.
The following colloquy occurred between the trial court and defense counsel:
BY THE COURT:
Have you discussed the maximum and minimum sentence which he might receive if convicted?
BY MR. STAMPS [DEFENSE COUNSEL]:
Yes, and I discussed with him the possibility of double bills and maximum sentence that could be inferred in that particular case.
BY THE COURT:
You heard the Court reiterate the sentencing agreement?
BY MR. STAMPS:
Yes, Your Honor.
BY THE COURT:
Is that your understanding of it?
BY MR. STAMPS:
Yes, Your Honor, that is the understanding.
BY THE COURT:
Is that the sentencing agreement you discussed with him?
BY MR. STAMPS:
That's the agreement I discussed with him, Your Honor.
BY THE COURT:
In your opinion, does he understand?
BY MR. STAMPS:
I'm fairly certain he understands it.
BY THE COURT:
In your opinion, is it acceptable  you say you're fairly certain?
BY MR. STAMPS:
I mean I'm certain he understands what it's all about.
BY THE COURT:
All right. Is it acceptable to him in your opinion?
BY MR. STAMPS:
It's acceptable to him in my opinion.
Furthermore, the trial court stated the following as he was imposing sentence:
Mr. Cousin, in accordance with the sentencing agreement, the Court hereby sentences you to serve a period of twenty years with the Department of Corrections on each of the two counts. The Court will run them concurrent with each other and also concurrent with any jail time you must serve as a result of a parole violation. The Court will give you credit for time served. And let the record reflect this is a Crosby plea.
Based on the record before us, defendant is precluded from challenging his sentences on appeal. La.C.Cr.P. art. 881.2(A)(2) provides "[t]he defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea." The Louisiana Supreme Court recently considered the effect of this article in State v. Young, 96-0195, p. 7 (La. 10/15/96); 680 So.2d 1171, 1175, where the court said:
Defendant voluntarily and with the assistance of counsel decided to enter into a plea agreement so he would not be subjected to a term of imprisonment longer than a total of thirty years for all of the charges against him. Defendant was sentenced within the agreed upon range. In fact, defendant was sentenced to a term of imprisonment which was less than the sentencing cap he pled guilty under. Therefore, we find La.C.Cr.P. art. 881.2(A)(2) precludes defendant from appealing his sentence imposed in conformity with a plea agreement which was set forth in the record at the time of his plea. Thus, defendant's conviction and sentence are affirmed.
In the instant case, we find that defendant is precluded from challenging his sentences on appeal by La.C.Cr.P. art. 881.2(A)(2). Thus, we do not consider the claim of excessiveness.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] Judge Remy Chiasson serving by appointment of the Louisiana Supreme Court.
[2] The original bill of information charged the defendant with one count of possession. This charge was amended to possession with intent to distribute, and defendant entered a plea of not guilty to the amended charge. Thereafter, the bill of information was amended to add the second count of possession with intent to distribute. The court minutes do not indicate that defendant was rearraigned after this amendment. Nevertheless, failure to rearraign the defendant was waived, since defendant did not object before trial. See La.Code Crim. P. art. 555; State v. Ross, 95-1240, p. 2 n. 2 (La.App. 1st Cir. 5/10/96); 674 So.2d 489, 491 n. 2.
[3] The record does not contain any assignments of error. The assignments of error are taken from defendant's brief. Although defendant did not properly designate these assignments of error as required by La.C.Cr.P. arts. 844, 916(1) and (5), and 920 in effect at the time of this appeal, this court is bound to review the errors assigned and argued in his brief in accordance with the Supreme Court's ruling in State v. Galliano, 94-2030, 94-2280 (La. 1/6/95), 648 So.2d 911. See State v. Galliano, 93-1101, p. 2 n. 1 (La.App. 1st Cir. 5/5/95), 655 So.2d 538, 540 n. 1. Furthermore, Articles 844A and 916(5) have been amended. See 1997 La. Acts. No. 642, § 1.