Dear Mr. Doughty:
This office is in receipt of your request for an opinion of the Attorney General regarding the inspection of school board records.
LSA-R.S. 44:1(A) defines public records as:
 All records, writings, accounts, letters and letter books, maps, drawings, memoranda and papers, and all copies or duplicates thereof, and all photographs or other similar reproductions of the same, having been used, being in use, or prepared for use in the conduct, transaction or performance of any business, transaction, work, duty or function which was conducted, transacted or performed by or under the authority of the Constitution or the laws of this state, or the ordinances or mandates or orders of any municipal or parish government or officer of any board or commission or office established or set up by the Constitution or the laws of this state, or concerning or relating to the receipt or payment of any money received or paid by or under the authority of the Constitution or the laws of this state are public records, subject to the provisions of this Chapter except as hereinafter provided.
In Attorney General Opinion 89-602 this office observed a parish superintendent is required under R.S. 17:415 to "make and keep such school records as shall be prescribed by the state superintendent of education." It was noted that except for confidential records, all records maintained by the parish superintendent are public records and subject to public inspection. Accordingly, it was concluded that "the parish superintendent must share with the public all information maintained by him or by the parish school board, and not explicitly declared by law to be confidential, since this is a government entity making decisions which affects the public at large."
The Supreme Court has ruled that students maintain their constitutional rights, including the right to privacy, in respect to school records.U.S. v. Miami University, S.D. Ohio 2000, 91 F. Supp.2d 1132. Falvo v.Owasso Independent School Dist., No. 1-011, C.A. 10 (Okla) 2000, 233F.3d 1203. This right protects the student from unreasonable intrusions into his or her confidential records. The confidentiality of student records is protected by 20 U.S.C. § 1232g. This provision prohibits all educational institutions that receive federal funds from releasing any protected information about a student. (See Attorney General Opinion 92-584.) Student records that are personally identifiable with a student are confidential to a student and his parents and are therefore excluded from the Public Records Act and are not subject to public inspection or release without consent and authorization of affected parties. (See Attorney General Opinions 76-186 and 00-64.)
In response to your inquiry as to the handling of old (early 1900s) school records, LSA-R.S. 44:410 mandates the director of the state's archives and records service to set forth policies and provisions for the management of records by state and local governmental agencies.
LSA-R.S. 44:36 provides that all persons having custody or control of any public record shall preserve them for at least three years from the date on which the public record was made unless a formal retention schedule has been executed to provide otherwise. However, as referenced in Attorney General Opinion 92-307:
 We do not believe the requirement that public records must be maintained for three years would preclude a requirement by the State Board of Elementary and Secondary Education from requiring the record of a student's name, address, grades, attendance record, classes attended and year completed be maintained for a longer period of time or indefinitely.
Therefore, the manner in which the records are to be handled and the length of time the records are to be maintained will be determined by the state superintendent of education and/or the director of state archives.
Student records that are personally identifiable with a student are confidential to a student and his parents and are therefore excluded from the Public Records Act, and are not subject to public inspection or release without the consent and authorization of the affected parties.
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 _______________________________ ANN EVANS WALL Assistant Attorney General
RPI/AEW:dsc
Enclosures
OPINION NUMBER 89-602
March 5, 1990
90-B-4 — PUBLIC MEETINGS — State Local Governing Bodies 94 — SCHOOLS SCHOOL DISTRICTS — Administrations, Government Officers 90-C — PUBLIC RECORDS 90-A-2 — PUBLIC FUNDS — Loan, Pledge, or Grant R.S. 42:4.1; R.S. 42:4.2(A)(2); R.S. 42:5; R.S. 42:6; R.S. 42:6.1; R.S. 42:44.1; R.S. 17:415; R.S. 44:31; Art. VII. Sec. 14, La. Const.
School boards are subject to the Open Meetings Law but may meet where less than an actual quorum is present to discuss matters over which they have jurisdiction, control. supervision and advisory power. A committee of the local school board as subject to the Open Meetings Law. Parish superintendent must share with the public all records maintained by him or the parish school board. School board may not pay membership dues for the superintendent to be a member of the local Chamber of Commerce.
Dr. Ronald J. Perry, Superintendent St. Mary Parish School Board P. O. Box 170 Centerville, LA 70522
Dear Mr. Perry:
You have requested an opinion of this office on the following specific questions:
 1. Whether it would be in violation of the Open Meetings Law for less than a quorum of school board members to meet, merely for discussion, where no decisions, votes, notes, or other action is taken?
 2. Whether or not a committee meeting of the local school board would be subject to the Open Meetings Law if no decisions, votes, or other action is taken and merely recommendations are made?
 3. Is it the intent of Public Records Law, R.S. 44:1
et seq., that a superintendent must share with the public all information maintained by the school board such as memos, briefs, etc; even though it may reflect the superintendent's personal impression or opinion?
 4. Whether or not the school district's "Superintendent School District Fund" may pay membership dues to the local Chamber of Commerce?
The Louisiana Open Meetings Law is contained in La.R.S. 42:4.1 et seq. and was enacted to prevent private meetings of public bodies where only the end result is observed by the public. Citizens have a right to be aware of the discussions and deliberations that go into the making of public policy. In furtherance of this, R.S. 42:4.1 indicates that the Open Meetings Law should be construed liberally.
La.R.S. 42:4.2 (A)(2) lists school boards as one of the public bodies subject to the law, that is, bodies which must hold open meetings. The terms "meeting" and "quorum" are defined by R.S. 42:4.2 as follows:
 1. "Meeting" means the convening of a quorum of a public body to deliberate or act on a matter over which the public body as an entity has supervision, control, jurisdiction or advisory power
 3. "Quorum" means a simple majority of the total membership of a public body.
In Brown v. East Baton Rouge Parish School Board, 405 So.2d 1148 1148
(La.App. 1, 1981), the Court held that a "walking quorum" would have the effect of circumventing the provisions of the Open Meetings Law. But the gathering of less than a quorum of school board members at the office of one board member was not a closed meeting in violation of the Open Meetings Law. The Court stated this was especially true since the meeting was not designed to make any kind of decisions or take any action.
It is the opinion of this office that school boards are public bodies subject to the Open Meetings Law. However, it appears that there would be no violation of the law if there were not an actual "meeting." In other words, there is no violation where less than an actual quorum of the public body meets where no decisions, votes, notes, or other action is taken.
Thus, three board members of a fifteen member board, which constitutes less than an actual quorum, can meet without violating the law provided no decisions, votes, or other action is taken.
The second issue raised in your request is whether the Open Meetings Law would pertain to committee meetings of the school board.
La.R.S. 42:4.2 (A)(2) lists "any committee or subcommittee" as a public body subject to the Open Meetings Law. In addition, the "official convening" which appears in the statutory definition of "meetings" in R.S. 42:5 means any prior notice given to members of a public body that a meeting will be held to discuss matters of public policy.
The liberal construction of the Open Meetings Law indicates that all meetings of a public body are subject to the Open Meetings Law if prior notice of the meeting is given to its members. The fact that a committee cannot make a final decision on a matter does not remove it from the ambit of the Open Meetings Law. R.S. 42:5 requires that meetings of public bodies on matters over which they have supervision, control, jurisdiction or advisory powers be open to the public. The same would be true for committees of such a body or executive sessions of such bodies where no final action is taken: Opn. Atty. Gen. No. 76-1399.
There are certain exceptions to the Open Meetings Law where even a quorum of a public body may hold closed meetings and these are set forth in R.S. 42:6.1.
In summary, any meeting of a public body, or committee thereof, for the discussion of public policy, is subject to the Open Meetings Law unless closed pursuant to R.S. 42:6 and R.S. 42:6.1.
Your third issue is whether or not a superintendent must share with the public all the information maintained by the school board under the Public Records Law R.S. 44.1.
As a parish superintendent, La.R.S. 17:415 requires that parish superintendents "make and keep such school records as shall be prescribed by the state superintendent of education." With the exception of school records which, because they are confidential, are not subject to public records, all records maintained by the parish superintendent are public records and subject to public inspection.
The basic purpose of the public records statute (R.S. 44:31 et seq.) is to implement for the public the right to be reasonably informed as to the manner, basis, and reasons upon which government affairs are conducted. Therefore, the Public Records Law must be liberally construed so as to enlarge rather than restrict access to public records by the public.Laplante v. Steward, 470 So.2d 1018 (La.App. 1, 1985).
The Public Records statute, R.S. 44:31, grants to any person of the age of majority the right to examine and copy any public records.
It is our opinion that the parish superintendent must share with the public all information maintained by him or by the parish school board, and not explicitly declared by law to be confidential, since this is a government entity making decisions which affect the public at large.
The fourth issue is whether or not the "Superintendent Expense Account Fund" can pay for your membership dues to the local Chamber of Commerce.
Article VII, Sec. 14, Par. A of the Louisiana Constitution of 1974 provides as follows:
 (A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private. Neither the state nor a political subdivision shall subscribe to or purchase the stock of a corporation or association or for any private enterprise.
An exception to Article VII, Section 14, is set forth in Paragraph C as follows:
 (C) Cooperative Endeavors. For a public purpose, the state and its political subdivisions or political cooperations may engage in cooperation with each other, with the United States or its agencies, or with any public or private association, corporation, or individual.
This office has long since held that a municipality may not purchase memberships in a Chamber of Commerce. Opn. Atty. Gen. 1946-48, p. 462. The municipality may not pay for the dues incurred by a municipal officer in local organizations, such as the Chamber of Commerce, unless the expenditure of dues are in the discharge of a duty pertaining to his office. Opn. Atty. Gen. 79-502. In addition, it does not appear that the exception to the prohibited uses as stated in Article VII, Section 14, Par. C of the Louisiana Constitution is applicable to the payment of dues for membership in a local Chamber of Commerce.
Therefore, it appears that the "Superintendent Expense Account Fund" may not pay membership dues to the local Chamber of Commerce.
I trust this answers your inquiries. Please let me know if we may be of any further assistance.
Sincerely,
 WILLIAM J. GUSTE, JR. Attorney General
 BY: __________________________ GLENN R. DUCOTE Assistant Attorney General
GRD: tm
OPINION NUMBER 92-584
RELEASED FEBRUARY 17, 1993
15-A — CONSTITUTIONAL LAW 94 SCHOOLS SCHOOL DISTRICTS — (Administration, Government Officers) 100 SCHOOLS SCHOOL DISTRICTS — (Teachers, Principals 
Superintendents, Sabbatical Leave, Extracurricular Activities, Students) 20 U.S.C. § 1232q, U.S.C. AM 14
Ms. Lottie Polozola Beebe Member District 5 St. Landry Parish School Board H.C. 67 Box 478 Palmetto, Louisiana 70570
Dear Ms. Beebe:
You have requested an opinion of this office concerning a situation involving the St. Landry Parish School Board in which you expressed concerns of possible constitutional and ethical violations by that Board or some of its members.
The facts relevant to your inquiries, as related to us in your letter of August 17, 1992, concern the consideration by the School Board of grade change allegations against a principal within the School Board's jurisdiction. As it appears from your letter, a St. Landry Parish School Board member obtained the records of a student who allegedly received a grade "altered" by the principal at issue. These records were delivered to the Louisiana Department of Education. Upon hearing that the records were given to the Department, Mr. Raymond Fontenot, St. Landry Parish Superintendent of Schools, was notified and thereafter ordered an internal investigation of the alleged grade changes. A committee was formed to review this matter. One of the members of the review committee was a teacher who is related by marriage to a School Board member. After an investigation by the review committee, the School Board decided to vote on the termination of the principal and the School Board member related to the member of the review committee did not recuse himself from voting on the issue. From these facts, your concerns as to the following issues have arisen:
 (1) Were the student's records which were delivered to the Department of Education, to prove allegations of grade alteration, done so in a manner which was in violation of that student's constitutional right to privacy?
 (2) Was there an ethical violation in allowing a School Board member, who is related to a member of the review committee, to vote on the allegations against the accused principal which resulted in his termination?
First, the United States Supreme Court has ruled that upon entering a public school a student does not lose his or her constitutional rights, including the right to privacy. This right protects the student from unreasonable intrusions into his or her confidential records. However, this right is not absolute. It may be waived by the student's parents. Further, in certain circumstances the State may have access to these records where it is found that there is an interest which outweighs the student's privacy rights.
The right to privacy as it concerns educational records is codified at20 U.S.C. § 1232g. This statute includes certain exceptions in which school system personnel may have access to student's records without parental consent.
Adoption of local policies concerning access to student records consistent with this constitutional privacy right and 20 U.S.C. § 1232g
is authorized by the State Board of Elementary and Secondary Education. See, Bulletin 741 — MAINTENANCE AND USE OF SYSTEM RECORDS AND USE OF SYSTEM RECORDS AND REPORTS (1.025.00-1.025.05) St. Landry Parish School Board has adopted such a policy. According to the Board's policy a student's records are available to "school personnel" within the school system for purposes of "working toward either the affective or cognitive goals of the system." School personnel is defined as "any person or persons under contract to the system . . ." Further, under this same policy, where student records are released outside of the school system to the State Department of Education the student's name and all identifying marks must be removed first.
It is the opinion of this office that the release of a student's records to a School Board member is not authorized by this policy because a School Board member is not under contract and therefore is not school personnel as defined by that policy.
Further, according to the Board's policy, data released to the Department of Education must be free of any identifying information. This rule should not be circumvented by releasing a student's records to a School Board member who intends to use them for the purpose of going to the Department. Under the facts of this case as you present them, it is our opinion that the student's parents should have been notified and consent given before these records were released.
In regard to your second inquiry concerning a possible ethical breach, it should be noted that it is not the duty of this office to rule on questions of ethical violations by governmental officials and any opinion by this office regarding such questions would not be considered definitive. If you require further review of this issue, the Board of Ethics for Elected Officials should be contacted.
In conclusion, it is the opinion of this office that under St. Landry Parish School Board's policy the release of a student's records to a School Board member for the purpose of delivering them to the Department of Education without first obtaining the consent of the student's parents is improper, and a violation of that student's right to privacy. Further, an opinion of the Board of Ethics for Elected Officials should be sought.
I hope that this sufficiently addresses your inquiries. If you require any further assistance, please feel free to contact this office.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: BETH A. CONRAD Assistant Attorney General
RPI/BAC:pab 0223p
OPINION 76-186
February 12, 1976
90 C — PUBLIC SCHOOLS
Student records where personally identifiable with the students are not public records and cannot be released without consent.
R.S. 44:1(A), 17:51, 44:31
Mrs. Glenda E. Dufreche Supervisor Special Education Tangipahoa Parish School Board 313 E. Oak Street Amite, Louisiana 70422
Dear Mrs. Dufreche:
Your request for an opinion from e Attorney General has been referred to this office for attention.
The questions raised in your letter concern themselves with the Public Records Act.
Specifically, you are concerned with the release of student grades, test, scores, birth dates, Special Education Competent Authority Reports, medical records or any such information in the files of your school system. Further, you request to be advised of the laws enacted covering the release of such privileged records and what required authorization we must obtain prior to their release.
LSA-R.S. 44:1(A) defines public records as follows:
 All records, writings accounts, letters and letter books, maps, drawings, memoranda and papers, and all copies or duplicates thereof, and all photographs or other similar reproductions of the same, having been used, being in use, or prepared for use in the conduct, transaction or performance of any business, transaction, work, duty or function which was conducted, transacted or performed by or under die authority of the Constitution or the laws of this state, or the ordinances or mandates or orders of any municipal or parish government or office of any board or commission or office established or set up by the Constitution or the laws of this state, or concerning or relating to the receipt or payment of any money received or paid by or under the authority of the Constitution or the laws of this state are public records, subject to the provisions of this Chapter except as hereinafter provided.
The statistics and reports of the tests given to students in the public schools, to which you refer, are records prepared for use in the conduct of the business of the parish school board, which is created by statute (R.S. 17:51), and therefore such statistics and reports are public records, subject to public inspection. R.S. 44:31.
It is an entirely different matter where access is sought to an individual student's records. This would not concern a record of the conduct of the business of the school board, but rather the performances of an individual student. Such records are confidential to the student and his parents, and are therefore excluded from the Public Records Act. Where release of a student record has the effect of making that student personally identifiable, then its release without consent is a violation of that individual's right of privacy. Opn. Atty. Gen. Nov. 6, 1974, Opn. Atty. Gen. Jan. 31, 1974.
Your letter makes reference to medical records of a student. The legislature has considered this subject separately. LSA-R.S. 44:7.
The statute as amended is enclosed for your reference.
There can be no question on the confidentiality of a medical record. The conditions for its release are specifically considered in a detailed opinion issued by this office June 9, 1975 (Opn. No. 75-491) . We re-affirm this opinion and enclose a copy of your reference.
In conclusion, we state that statistics and reports that do not identify an individual student are subject to public inspection or release as public records.
Student records that are personally identifiable with that student are not subject to public inspection or release without the consent and authorization of the affected parties.
If there are any further questions, please do not hesitate to call on us. If any personal record should become the subject of any litigation, we recommend that you contact this office for specific advice.
Sincerely,
 WILLIAM J. GUSTE, JR. ATTORNEY GENERAL
 PAUL J. PERLITA Assistant Attorney General
Mrs. Glenda E. Dufreche Tangipahoa Parish School Board
The questions raised in your letter concerned the Public Records Act.See La.Rev.Stat. Ann. § 44:1A (West 1951 Supp. 1978). Specifically, you were concerned with the release of student grades, test scores, birth dates, Special Education Competent Authority Reports, medical records or any such information in the files of your school system. Further, you requested advice as to the laws covering the release of such privileged records and what authorization must be obtained prior to their release.
The statistics and reports of the tests given to students in the public schools, to which you refer, are records prepared for use in the conduct of the business of the parish school board, which is created by statute,id. § 17:51 (West 1963), and therefore such statistics and reports are public records, subject to public inspection. Id. § 44:31 (West 1951).
It is an entirely different matter where access is sought to an individual student's records. This would not concern a record of the conduct of the business of the school board, but rather the performances of an individual student. Such records are confidential to the student and his parents and are therefore excluded from the Public Records Act. Where release of a student record has the effect of making that student personally identifiable, its release without consent is a violation of that individual's right of privacy. Op. Att'y Gen. Nov. 6, 1974; Op. Att'y Gen. Jan. 31, 1974.
Your letter referred to medical records of a student. The legislature has considered this subject separately. See La.Rev.Stat. Ann. § 44:7
(West Supp. 1978). There can be no question as to the confidentiality of a medical record. The conditions for its release are specifically considered in a detailed opinion issued by this office June 9, 1975 (Op. No. 75-491). We reaffirm this opinion.
In conclusion, statistics and reports that do not identify an individual student are subject to public inspection or release as public records. Student records that are personally identifiable with that student are not subject to public inspection or release without the consent and authorization of the affected parties.
Paul J. Ferlita
OPINION NO. 75-491
June 9, 1975
R.S. 44:7 as amended by Act 315 of 1974.
Re: Medical and hospital records may be released without a patient's consent if they are material and relevant to any action brought by the patient, or relevant to an action for wrongful death brought by his survivors, or if requested by a bona fide agency, school, or committee and used solely for medical purposes. Relevant medical records may also be subpoenaed if a deceased patient's will is contested. In all other cases, including investigation by law enforcement officials, a patient's specific consent is necessary for a release of the records.
Re: Confidentiality of medical records.
Ms. Sandra Mann RRA, Medical Record Department Earl K. Long Memorial Hospital 5825 Airline Highway Baton Rouge, Louisiana 70805
Dear Ms. Mann:
In your letter of April 7, 1975, you ask for an opinion on the following:
(1) When can medical records be subpoenaed?
 (2) When is patient authorization necessary for release of information? In giving opinion you are particularly concerned about releasing information to Probation and Parole officers, District Attorney, Police Department and to the Federal Bureau of Investigation.
 (3) When is patient authorization not necessary for release of medical records?
R.S. 44:7, which concerns the confidentiality of hospital and medical records was amended by Act No. 315 of 1974 to provide for the use of medical records in certain instances. A copy of Act No. 315 is enclosed for your convenience
It is the opinion of this office that hospital and medical records of a patient are subject to a court subpoena only in the following instances:
(1) By written consent of the patient.
 (2) If there is a court suit contesting the validity of the patient's will or the validity of any instrument executed by the patient in which property is conveyed if the records are relevant as to the mental condition of the patient.
 (3) If an action to recover damages for the wrongful death of the patient has been brought by his survivors.
 (4) If the patient brings an action to recover damages for workmen's compensation, personal injury, disability or other benefits.
A patient's specific authorization for the release of medical or hospital records is not necessary in the following instances:
 (1) If the medical or hospital records are material and relevant to any action brought by the patient for damages, for personal injuries, workmen's compensation, disability benefits, or any other benefits. The bringing of such an action constitutes consent of the patient to the release of the hospital and medical records.
 (2) If the patient's survivors have made a claim, demand or have brought an action for the wrongful death of the patient. Such claim, demand or action constitutes consent to the release of the medical records.
 (3) Information, interviews, reports, statements, memorandum, or other data relating to the condition and treatment of any patient may be released to the Division of Health Maintenance and Ambulatory Patient Service of the Louisiana Health, and Social and Rehabilitation Services Administration, Louisiana State Medical Society, Medical Schools, or bona fide medical societies or committees or hospital committees to be used in the course of any study for the purpose of reducing morbidity or mortality or reviewing treatment of patients. In all such cases except where an immunization survey is being conducted on behalf of the Division of Health Maintenance and Ambulatory Patient Services of the Louisiana Health, and Social and Rehabilitation Services Administration, the confidentiality of the patient's identity must be preserved.
In all situations, other than those listed above, a patient's medical or hospital records may not be released to anyone, including probation and parole officers, district attorneys and police departments without the patient's written consent.
For your information we are enclosing a copy of Senate Bill No. 46 which, if passed, would amend R.S. 44:7.
We trust that this answers all of your questions. If, however, you desire clarification as to some point or have further questions, please do not hesitate to call us.
Very cordially yours,
 WILLIAM J. GUSTE, JR. ATTORNEY GENERAL
 By: J. MARVIN MONTGOMERY STAFF ATTORNEY
JMM:eb
OPINION NUMBER 00-64
March 29, 2000
94 — SCHOOLS AND SCHOOL DISTRICTS — ADMINISTRATION, GOVERNMENT AND OFFICERS
20 U.S.C. § 1232g LSA-R.S. 17:1237
LSA-R.S. 17:81K LSA-R.S. 17:1238
LSA-R.S. 81K(1) LSA-R.S. 4: et seq. LSA-R.S. 17:100.4 LSA-R.S. 17:391.5
1) In response to question one, LSA-R.S. 17:81K(1) provides that any parish school board member does have the right to examine any and all records of the school system, except school employee records relative to evaluations, observations, formal complaints and grievances.
a) The federal legislation and the Louisiana Attorney General opinions cited above, applies to the Public Records Act found in LSA-R.S. 44:1 et seq. It does not apply to LSA-R.S. 17:81K(1). Therefore, a school board member shall have the right to examine student records, special education records, health records and other confidential records.
b) It would appear that the records of any disciplinary action taken pursuant to a formal complaint would also be included in exception in17:81K1). However, please note that 17:81K(2) provides that ". . . any city or parish school board, upon a majority vote of the authorized board membership shall have the right to examine any or all records of the school system." This means that if the school board has a majority vote of the authorized board membership to examine these documents, they are permitted by law to do so.
c) Please refer to your local school board policy for the definition of a grievance and the requirements regarding the grievance procedure.
d) The requirement of having a written policy refers to "any other person" who shall have the right to examine any or all records of the school system relative to the exceptions.
2) See response to 1(b). In regards to employee records a school board by majority vote shall have the right to examine all records of the school system.
3) It does not appear that the intent of LSA-R.S. 17:81K is to allow school board members access to the public record law without the need of making a formal request.
Mr. John Diasselliss Assistant District Attorney Fortieth Judicial District Parish of St. John the Baptist P.O. Box 99 Edgard, LA 70049
Dear Mr. Diasselliss:
I am in receipt of your request for a clarification of Opinion No. 99-382 concerning the following:
 1. Does LSA-R.S. 17:81K(1) provide that any parish school board member have the right to examine any and all records of the school system, except school employees records relative to evaluations, observations, formal complaints and grievances.
 (a) What about student records, special education records, health records and other confidential records?
 (b) Does the exception of formal complaints limit access to discipline actions arising from formal complaints?
 (c) What is a formal complaint? A written complaint to a principal or superintendent?
 (d) 17:81K(1)(2) requires a vote of the majority of the parish school board, therefore, does the requirement "authorized pursuant to a written policy" of a parish school board apply to a parish school board members right to examine the school system records under 14:81K(1)?
 2. Does LSA-R.S. 17:81K(1)(2) all a school board by a majority vote to allow themselves to have the right to examine all records of the school system including all employee records, student records, special education records, health records and other confidential records? (Sic)
 3. Could the intent of 17:81K(1) be to allow school board members access to the public records of the law without the need of making a formal request?
LSA-R.S. 17:81(K)(1) provides the following concerning the general powers of a city and parish school board:
 K. (1) Notwithstanding any other provision of law or rule or regulation to the contrary, any city or parish school board member and any other person authorized pursuant to written policy of a city or parish school board shall have the right to examine any or all records of the school system except school employee records relative to evaluations, observations, formal complaints, and grievances.
 (2) Notwithstanding any other provision of law or rule or regulation to the contrary, any city or parish school board, upon a majority vote of the authorized board membership, shall have the right to examine any or all records of the school system.
 (3) Should an employee's personnel file be accessed by the city or parish school board, the employee whose file was so accessed shall receive written notice of such action, and the individual city or parish school board members shall maintain the confidentiality of any documents in the file so examined.
In Attorney General Opinion No. 99-382, our office concluded the following:
 Therefore, it is no longer the opinion of our office that school board members are to be excluded from access to the personnel files of school employees. Attorney General Opinion No. 90-193 is withdrawn only in respect to excluding school board members from access to the personnel files of school employees.
 In answer to your first question, provided LSA-R.S. 17:81
is complied with, a school board member can access an employee's personnel file to review the file to see if any disciplinary action has been taken against an employee and if so, what action was taken. In response to your second question, provided LSA-R.S. 17:81
is complied with, a superintendent can verbally advise a school board member of disciplinary action taken against an employee.
In response to question 1, LSA-R.S. 17:81K(1) does provide that any parish school board member does have the right to examine any and all records of the school system, except school employee records relative to evaluations, observations, formal complaints and grievances.
In (a), you inquire about student records, special education records, health records and other confidential records. Section K(1) states:
 . . . any city or parish school board member shall have the right to examine any or all records of the school system except school employee records relative to. . .
As discussed in Attorney General Opinion No. 93-285,
 . . . it should be noted that under Federal law the confidentiality of student records is protected by 20 U.S.C. § 1232g. This provision prohibits all educational institutions who receive federal funds from releasing any protected information about a student. Information which is `directory information' may be released without losing federal funds.
The names and addresses of students in public schools are public records, which a citizen could request and receive. (See Attorney General Opinion No. 91-73).
Student records that are personally identifiable with a student are confidential to a student and his parents and are therefore excluded form the Public Records Act and are not subject to public inspection or release without consent and authorization of affected parties. (See Attorney General Opinion No. 76-186).
The federal legislation and the Louisiana Attorney General opinions cited above, applies to the Public Records Act found in LSA-R.S. 44:1 et seq. It does not apply to LSA-R.S. 17:81K(1). Therefore, a school board member shall have the right to examine student records, special education records, health records and other confidential records.
In Section (b) you ask whether the exception of "formal complaints" limits access to disciplinary action arising from formal complaints. The language in the exception in K(1) specifies ". . . employee records relative to evaluations, observations, formal complaint and grievances." It would appear that the records of any disciplinary action taken pursuant to a formal complaint would also be included in exception in17:81(K)(1). However, please note that 17:81(K)(2) provides that ". . . any city or parish school board, upon a majority vote of the authorized board membership, shall have the right to examine any or all records of the school system." This means that if the school board has a majority vote of the authorized board membership to examine these documents, they are permitted by law to do so.
This response is consistent with Attorney General Opinion No. 99-382.
In Section (c) you ask what a formal complaint is. You ask whether it is a written complaint to a principal or superintendent. Although the Louisiana Revised Statutes does not define a "formal complaint", it does discuss grievance procedures for teachers and other school employees in LSA-R.S. 17:100.4.
Section A(1) states the following:
 Each city and parish school board shall adopt rules, regulations, and policies necessary to establish a grievance procedure that shall guarantee a fair hearing on grievances by any teacher or group of teachers or other school employee or group of employees employed by such school board. However, prior to the adoption of the rules, regulations, and policies, each school board shall consult with the various professional organizations that represent the teachers or other school employees in that school system regarding the grievance procedure.
Please refer to your local school board policy for the definition of a formal complaint and a grievance and the requirements regarding both.
In Section (d), it appears that you are inquiring whether a majority vote of the parish school board is required pursuant to a written policy to examine the school system records under LSA-R.S. 14:81K(1). The requirement of having a written policy refers to "any other person" who shall have the right to examine any or all records of the school system relative to the exceptions.
In question two, you ask whether a school board by majority vote shall have the right to examine all records of the school system including all employee records, student records, special education records, health records and other confidential records. As discussed in question 1(a), in light of federal legislation and the Louisiana Attorney General opinions cited above, LSA-R.S. 17:81K(1) does not apply to student records, special education records, health records or other confidential records that are personally identifiable. In regards to employee records, a school board by majority vote shall have the right to examine all records of the school system.
In question three, you seek a response as to whether the intent of LSA-R.S. 17:81K is to allow school board members access to the public record of the school system allowed by the Public Records Law without the need of making a formal request.
As discussed in Attorney General Opinion 90-193,
 . . . school employee personnel files are public records under La.R.S. 44:1 et seq. They are, however, subject to the exemptions contained in that act and other exceptions provided by law. We also note that La.R.S. 17:1238 provides that nothing in the School Employee File Act shall be construed to supersede the Public Records Act, La. 44.1 et seq.
LSA-R.S. 17:1237 entitled "Access to files" located in the section concerning school employees personnel files reads in pertinent part as follows:
 A. No school employee shall be denied access to his personnel file. The contents of a school employee's personnel file shall not be divulged to third parties absent the express written consent of the school employee, except when ordered by a court or by subpoena, and no school system employee other than the personnel file custodian or the superintendent of schools for the system, or the designee of either, who shall be a school system employee shall be allowed access to a school employee's personnel file without the school employee's express written consent, unless that employee is charged with the duty of supervising that particular school employee's performance. In the case that a personnel file should be accessed by the superintendent or someone designated by him, the employee whose file was so accessed shall receive written notice of he fact and the name and title of the person who was permitted access. All persons permitted access under this Section shall maintain the confidentiality of those documents in the file which are not matters of public record.
In Opinion No. 90-193, "The Act" refers to LSA-R.S. 17:1237. In that opinion our office concluded the following:
1. The (Act) does not make the personnel files non-public. A personnel file is public record except for those exemptions set out in La.R.S. 44:11 and the personnel evaluations and assessments made non-public by La.R.S. 17:391.5. The Act limits access to the files to the situations covered by La.R.S. 17:1237.
2. The (Act) limits access to the files to situations where the employee has consented in writing and the other exceptions. Board members are "third parties" under the (Act) an their access is limited as above. Board members formerly had access to non-public items covered by La.R.S.17:391.5. Those items are still non-public and Board members access is limited to the situations covered by R.S. 17:1237. In any case, where the personnel file is accessed, the employee shall receive written notice.
3. Access to a school employees's file is limited to those documents requested and as conditioned above.
As discussed above and in Attorney General Opinion No. 99-382, it is no longer the opinion of our office that school board members are to be excluded from access to the personnel files of school employees. In Opinion No. 99-382, Attorney General Opinion No. 90-193 is withdrawn only in respect to excluding board members from access to the personnel files of school employees.
Therefore, in answer to question three, it does not appear that the intent of LSA-R.S. 17:81K is to allow school board members access to the public record law without the need of making a formal request.
I hope this opinion sufficiently addresses your concerns. If I can be of further assistance, please let me know.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: BETH CONRAD LANGSTON ASSISTANT ATTORNEY GENERAL
RPI/BCL/sc
OPINION NUMBER 99-382
January 18, 2000
94 — SCHOOLS AND SCHOOL DISTRICTS — ADMINISTRATION, GOVERNMENT AND OFFICERS LSA-R.S. 17:1237 LSA-R.S. 17:1231, et seq. LSA-R.S. 17:1233(5)
1) In answer to your first question, a school board member can access an employee's personnel file to review the file to see if any disciplinary action has been taken against an employee and if so, what action was taken.
2) In response to your second question, provided LSA-R.S. 17:81 is complied with, a superintendent can verbally advise a school board member of disciplinary action taken against an employee.
Mr. John L. Diasselliss, III Assistant District Attorney Fortieth Judicial District Parish of St. John The Baptist P. O. Box 99 Edgard, LA 70049
Dear Mr. Diasselliss:
I am in receipt of your request for an attorney general's opinion concerning the following:
 1. Can a school board member have access to an employee's personnel file to review the file to see if any disciplinary action has been taken against an employee and if so, what disciplinary action was taken?
 2. Can the Superintendent verbally advise a school board member of disciplinary action taken against an employee?
LSA-R.S. 17:1237 pertains to "access to files" for school employees. It states:
 A. No school employee shall be denied access to his personnel file. The contents of a school employee's personnel file shall not be divulged to third parties absent the express written consent of the school employee, except when ordered by a court or by subpoena, and no school system employee other than the personnel file custodian or the superintendent of schools for the system, or the designee of either who shall be a school system employee shall be allowed access to a school employee's personnel file without the school employee's express written consent, unless that employee is charged with the duty of supervising that particular school employee's performance. In the case that a personnel file should be accessed by the superintendent or someone designated by him, the employee whose file was so accessed shall receive written notice of the fact and the name and title of the person who was permitted access. All persons permitted access under this Section shall maintain the confidentiality of those documents in the file which are not matters of public record.
 B. Any school employee requesting to see his personnel file shall be given access to his entire personnel file, except for any portion of the file maintained at his specific work site, at a single location and within a reasonable time for making the request. Such an employee shall be given access to any portion of his personnel file maintained at his work site, at such site and at any reasonable time.
"Third party" is defined in LSA-R.S. 17:1233(5) as:
 "Third party" means any person or entity not regularly employed or employed under a contract by the school system in which the school employee is employed.
In Attorney General Opinion No. 90-193, our office issued an opinion regarding the effect of LSA-R.S. 17:1231 et seq. (The School Employee Personnel Files Act) on the Public Records Act (LSA-R.S. 44:1 et seq.) Our office addressed the issue-at-hand in that opinion. Our office opined the following:
 This section prohibits disclosure to third parties absent the express written consent of the school employee, except by court order or subpoena. Only three people are authorized to access the file absent written consent. They are:
1. the personnel file custodian,
2. the superintendent of schools for the system.
 3. the designee of either #1 or #2 who must also be a school system employee.
 School board members are not school system employees and, unless a member was a system employee, they are excluded from access to the personnel files except by consent of the employee, court order or subpoena.
Our office concluded that:
 The (Act) limits access to the files to situations where the employee has consented in writing and the other exceptions. Board members are "third parties" under the (Act) and their access is limited as above. Board members formerly had access to non-public items covered by La.R.S. 17:391.5. Those items are still non-public and Board members access is limited to the situations covered by R.S. 17:1237. In any case, where the personnel file is accessed, the employee shall receive written notice.
Since Attorney General Opinion No. 90-193 was released, LSA-R.S.17:81 was amended in 1993, adding Section K. LSA-R.S. 17:81 states the following in pertinent part concerning the general powers of a city and parish school board:
 K.(1) Notwithstanding any other provision of law or rule or regulation to the contrary, any city or parish school board member and any other person authorized pursuant to written policy of a city or parish school board shall have the right to examine any or all records of the school system except school employee records relative to evaluations, observations, formal complaints, and grievances.
 (2) Notwithstanding any other provision of law or rule or regulation to the contrary, any city or parish school board, upon a majority vote of the authorized board membership, shall have the right to examine any or all records of the school system.
 (3) Should an employee's personnel file be accessed by the city or parish school board, the employee whose file was so accessed shall receive written notice of such action, and the individual city or parish school board members shall maintain the confidentiality of any documents in the file so examined.
Therefore, it is no longer the opinion of our office that school board members are to be excluded from access to the personnel files of school employees. Attorney General Opinion No. 90-193 is withdrawn only in respect to excluding school board members from access to the personnel files of school employees.
In answer to your first question, provided LSA-R.S. 17:81 is complied with, a school board member can access an employee's personnel file to review the file to see if any disciplinary action has been taken against an employee and if so, what action was taken. In response to your second question, provided LSA-R.S. 17:81 is complied with, a superintendent can verbally advise a school board member of disciplinary action taken against an employee.
I hope this opinion has sufficiently addressed your concerns. If I can be of further assistance, please let me know.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: BETH CONRAD LANGSTON ASSISTANT ATTORNEY GENERAL
RPI/BCL/sc
OPINION NUMBER 93-235
MAY 13, 1993
107 SHERIFFS — Constables Marshals, including ex-officio tax collectors, rights, powers duties in general LSA-R.S. 33:2201; R.S. 33:1433 (B); R.S. 33:1433 (A)(a).
The appointment of an honorary deputy sheriff is not prohibited by statute.
Mr. A.R. "Buddy" Hodgkins, Jr. Assistant Executive Director Louisiana Sheriffs' Association 1175 Nicholson Drive Baton Rouge, LA 70802
Dear Mr. Hodgkins:
This office is in receipt of your opinion request directed to Attorney General Richard P. Ieyoub. The request has been assigned to me for further review.
You raise the following issue for our determination:
 "Does Louisiana law prohibit the appointment of honorary deputy sheriffs?"
Our research reflects nothing in the statutes that prohibits a sheriff from appointing an individual as an "honorary deputy sheriff". In fact, LSA-R.S. 33:2201 (regarding family benefits to deceased law enforcement officers) applies to all sheriffs and deputy sheriffs, but specifically excludes honorary law enforcement officers:
 "(7) . . . Honorary law enforcement officers shall not be considered or interpreted to be law enforcement officers under this Section."
The law does allow sheriffs to appoint additional "special officers" to cope with emergency situations; however, these officers do in fact have police and arrest powers. LSA-R.S. 33:1433 (B).
In State v. Pittman, 368 So.2d 705 (La. 1979), a copy of which is attached, the Supreme Court held that an honorary deputy sheriff who spoke to a defendant in custody was not acting as an agent of police, and therfor did not have to Mirandize the defendant prior to the defendant's confession. The Court stated "that [he] was an honorary deputy sheriff is of no moment." 368 at 708. Further, the case of State v. Guidry,496 So.2d 650 (La.App. 1st. Cir. 1986), also makes reference to a separate category of "special deputies" that in actuality are not law enforcement officers. Therein, the court determined that security guard designated "special deputy" was not a law enforcement officer where he had never undertaken any special training as a police officer, had no duties as a special deputy, had no uniform and knew nothing about Miranda rights.
This office has concluded that an individual appointed "special deputy" who has no arrest authority, is not authorized to carry a firearm, is not covered under the municipal police professional liability insurance policy, and is not authorized to execute search or arrest warrants, or serve subpoenas is not a "law enforcement officer" for purposes of the Election Code. See Attorney General Opinion Number 90-601, a copy of which is enclosed.
The only "prohibition" might arguably be included in LSA-R.S. 33:1433
(A)(1), which states:
 "The sheriff of each parish and the civil and criminal sheriffs of the parish of Orleans may appoint as many deputies as necessary, but not more than authorized by law."
We are of the opinion that this statute is not dispositive of the issue, because (a) it is applicable only to Orleans Parish, and (b) pertains to a deputy who is in fact a law enforcement officer with all inherent police powers.
In summary, the statutes and caselaw acknowledge the existence of honorary deputy sheriffs. This office is of the opinion that such appointments are implicity sanctions by law, and are not prohibited therein.
Should you have further question in which we may be of assistance, please contact this office.
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 BY: _____________________ Kerry L. Kilpatrick Assistant Attorney General
OPINION NUMBER 90-601
December 4, 1990
26 — ELECTIONS — Election Officers (Party Committee, commissioners, Special Deputy Sheriffs) LSA-R.S. 18:428; LSA-R.S. 40:2402 (1)
"Law enforcement officer" as used in Election Code prohibition against service as commissioner as functional definition: commissioner who wears police uniform as Assistant Town Clerk to collect traffic tickets, but has no police powers, is not prohibited from serving as a commissioner-in-charge of election precinct.
Honorable David C. Butler, II Mayor, Village of Woodworth P.O. Box 228 Woodworth, LA 71458
Dear Mayor Butler:
You have requested an opinion from the Attorney General regarding the legality of Dorothy Gunter's service as a commissioner-in-charge of the precinct located at the Woodworth Community Center. You have raised this question because Ms. Gunter, who serves as Assistant Town Clerk as well as in other capacities in the Village of Woodworth, is also a special deputy for the Village. She was appointed a deputy by you and executed an oath of office which was filed with the Secretary of State.
LSA-R.S. 18:428, in pertinent part, provides:
 "A. Presence at polling place. Law enforcement officers shall not be stationed at polling places on election day, but the commissioners may summon law enforcement officers to assist them in preserving order, enforcing the election laws, or protecting election officials from interference with the performance of their duties. Law enforcement officers shall not be eligible to serve as commissioner-in-charge, commissioners, alternate commissioners, or watchers." (Emphasis added)
The intent of this law is to provide a safeguard against election irregularities or improper influencing of voters by law enforcement officers subject to political control.
The issue presented by Ms. Gunter's situation is whether she is in fact a "law enforcement officer". You state that she has no arrest authority, is not authorized to carry a firearm, is not covered under the Village's police professional liability insurance policy, and is not authorized to execute search or arrest warrants and other such process of the courts. You state the primary reason for the appointment was to enable Ms. Gunter to wear a police uniform whole on duty as Assistant Town Clerk, one of the duties of which is the collection of traffic fines.
More succinctly, is Ms. Gunter's identity as a "law enforcement officer: determined from her oath of office or from her function and authority.
Ms. Gunter is not paid for law enforcement duties and at best her role as special deputy is honorary.
The Attorney General has previous defined "law enforcement officer" on the basis of the functional definition provided in LSA-R.S. 40:2402 (1). See Opinions of the Attorney General No. 90-181, 90-181A and 89-210. "Peace officer" is thus defined as:
 "(a) "Peace officer" means any full-time employee of the state, a municipality, a sheriff, or other public agency, whose permanent duties actually include the making of arrests, the performing of searches and seizures, or the execution of criminal warrants, and is responsible for the prevention or detection of crime or for the enforcement of the penal traffic or highway laws of this state. . . "
By this functional standard, Ms. Gunter is not a "peace officer", and is, therefore, not a law enforcement officer. Her sole function as a special deputy appears to be the wearing of a police uniform while collecting fines for traffic tickets.
Accordingly, her service during elections as a commissioner-in-charge does not violate R.S. 18:428
Trusting this to be of sufficient information, I am,
Sincerely,
 WILLIAM J. GUSTE, JR. Attorney General
 BY: ______________________ CHARLES J. YEAGER Assistant Attorney General
OPINION NUMBER 91-73
March 12, 1991
90-C — PUBLIC RECORDS 94 — SCHOOL SCHOOL DISTRICTS R.S. 44:1; 17:391: 17:93
A citizen may request and receive a list of public school students names and addresses. This information is considered public record.
Mr. Lane A. Carson Chief, Civil Division Assistant District Attorney 428 E. Boston Street Covington, LA 70433
Dear Mr. Carson:
You have requested the opinion of this office as to whether or not a citizen can request and receive copies of public school students' names and addresses under the provision of the Louisiana Public Records Law, R.S. 44:1 et seq.
La.R.S. 44:1 (A) gives a general definition of "public records" and the public records law lists several exemptions. There is not an exemption in the public records law that includes the names and addresses of public school students. La.R.S. 17:391.4 (E) exempts test scores of individual students and La.R.S. 17:391.5 (E) exempts teacher evaluations from the public records law. These appear to be the only school records not considered public records.
In addition to the Public Records Law, La.R.S. 17:93 provides as follows:
 "Each parish superintendent shall keep a record of all business transacted by him as parish superintendent, the names, numbers and description of school districts, the tabulation of reports of school principals made monthly to him by the principals of the schools of his parish, and all other papers, books, and documents of value connected with his office, which shall be at all times subject to inspection and examination by the state superintendent of education, or by any officer, or citizen. In addition to his annual report to the state superintendent of education, which shall be made in accordance with instructions of the state superintendent of education, he shall furnish to the state department of education such narrative and such information as the state superintendent or the state board of education may from time to time require of him. (Emphasis added.)
In Wagner v. Redmond, 127 So.2d 275, (La. 4th Cir. 1960) the Fourth Circuit ruled that the names and addresses of the students in public schools must be supplied upon request. In applying La.R.S. 17:93, the court stated that "among the papers, books, and documents of value connected with his office must necessarily include the names and addresses of the children attending the public schools . . ."
In summary, the names and addresses of students in public schools are considered public record since there is no exception provided for in the public records law and any citizen may request a copy under the authority of La.R.S. 17:93.
I trust that this answers your inquiry. Please advise if we can be of further assistance.
Very truly yours,
 WILLIAM J. GUSTE, JR. ATTORNEY GENERAL
 BY: ________________________ GLEN R. DUCOTE Assistant Attorney General
njs:0294
OPINION NUMBER 90-193
May 2, 1990
90-C — PUBLIC RECORDS 94 — SCHOOLS AND SCHOOL DISTRICTS — Administration Government Officers La.R.S. 17:1231-1238; La.R.S. 44:1
La.R.S. 17:391.5; La.R.S. 391.2 (b)
Under the School Employees Personnel Files Act, a school board member may only access an employee's personnel file with that employee's written consent, or by court order or subpoena. Any access to the personnel file by anyone requires that written notice of that access be sent to the employee disclosing the name and title of the person having access to the file.
Mr. John L. Diasselliss, III Assistant District Attorney Fortieth Judicial District Parish of St. John the Baptist P. O. Box 390 LaPlace, LA 70069
Dear Mr. Diasselliss:
You have requested an opinion regarding the effect of LSA-R.S. 17:1231
et seq. (the School Employee Personnel Files Act) on the Public Records Act (LSA-R.S. 44:1 et seq.) and further ask, what access does a school board member now have to a school employee's personnel file?
Three specific questions are contained in your request. They are as follows:
 1. Does the School Employee Personnel Files Act
remove school employee personnel files from being accessed through the Public Records Act?
 2. Does the School Employee Personnel Files Act limit or prohibit access to school employees personnel files by school board members? If not, does the school employee have to be notified of access by a school board member?
 3. Does anyone who has access to a school employees personnel file, have the right to access the entire file or only the document or documents that they request to review?
Initially, we note that the chief purpose of the Act, La.R.S. 17:1231, is to notify school employees of documents placed in their file and to give them access to same, and an opportunity to rebut or explain the documents placed in that file.
As stated in our Opinion Number 88-372, school employee personnel files are public records under La.R.S. 44:1 et seq. They are, however, subject to the exemptions contained in that act and other exceptions provided by law. We also note that La.R.S. 17:1238 provides that nothing in the School Employee File Act shall be construed to supercede the Public Records Act, La. 44.1 et seq.
As stated in Opinion Number 88-372, certain personnel information about an employee is exempt under La.R.S. 44:11.
The School Employee Personnel Files Act must also be read in conjunction with Part VI of the General School Law, Public School Accountability and Assessment, specifically, La.R.S. 17:391.5 School Personnel Assessment and Evaluation. This section deals with the assessment and evaluation of teachers and Section E of R.S. 17:391.5
makes those reports confidential and states in pertinent part as follows:
 E. Copies of the assessment and evaluation report of any school employee retained by the school board are confidential, do not constitute a public record, and shall not be released or shown to any person except:
 (1) to said school employee or his designated representative(s),
 (2) to authorized school district officers and employees for all personnel matters and for any hearing which relates to personnel matters, and
(3) . . .
La.R.S. 17:391.2 (b) in Part VI, defines "school district" as follows:
 "the area of each parish or municipality under the jurisdiction of a school board,"
It is our initial opinion that the phrase "school district officer" in La.R.S. 17:391.5 (2) includes a school board member and if such member is authorized, he or she formerly had access to the evaluations covered by La.R.S. 17:391.5 for personnel matters or for a hearing that relates to a personnel matter.
This opinion must be modified in light of the more recent legislation; the School Employee Personnel Files Act, La.R.S. 17:1231-1238. That act was passed in 1987 and therefore if it is in conflict with R.S. 17:391.5
passed in 1977, the later act, being the most recent expression of legislative will, controls. There is a conflict. La.R.S. 17:1233 (5) defines "third party" as:
 "any person or entity not regularly employed or employed under a contract by the school system in which the school employee is employed."
In our opinion, that definition excludes an elected school board member who is not an employee or under contract with the school system. This definition is crucial to our opinion on the key section of the (Files Act) La.R.S. 17:1237 entitled, "Access to files." That section reads in pertinent part as follows:
 A. "No school employee shall be denied access to his personnel file. The contents of a school employee's personnel file shall not be divulged to third parties absent the express written consent of the school employee, except when ordered by a court or by subpoena, and no school system employee other than the personnel file custodian or the superintendent of schools for the system, or the designee of either who shall be a school system employee shall be allowed access to a school employee's personnel file without the school employee's express written consent, unless that employee is charged with the duty of supervising that particular school employee's performance. In the case that a personnel file should be accessed by the superintendent or someone designated by him, the employee whose file was so accessed shall receive written notice of the fact and the name and title of the person who was permitted access. All persons permitted access under this Section shall maintain the confidentiality of those documents in the file which are not matters of public record.
This section prohibits disclosure to third parties absent the express written consent of the school employee, except by court order or subpoena. Only three people are authorized to access the file absent written consent. They are:
1. the personnel file custodian,
2. the superintendent of schools for the system.
 3. the designee of either #1 or #2 who must also be a school system employee.
School board members are not school system employees and, unless a member was a system employee, they are excluded from access to the personnel files except by consent of the employee, court order or subpoena.
Our opinion on each of your questions is as follows:
 1. The (Act) does not make the personnel files non-public. A personnel file is public record except for those exemptions set out in La.R.S. 44:11
and the personnel evaluations and assessments made non-public by La.R.S. 17:391.5. The Act limits access to the files to the situations covered by La.R.S. 17:1237.
 2. The (Act) limits access to the files to situations where the employee has consented in writing and the other exceptions. Board members are "third parties" under the (Act) and their access is limited as above. Board members formerly had access to non-public items covered by La.R.S. 17:391.5. Those items are still non-public and Board members access is limited to the situations covered by R.S. 17:1237. In any case, where the personnel file is accessed, the employee shall receive written notice.
 3. Access to a school employee's file is limited to those documents requested and as conditioned above.
In conclusion, a school board member can access a school employee's personnel file only with that employee's written consent, by court order or subpoena.
We hope the foregoing has been helpful to your inquiry and should you have additional questions, please contact our office.
Sincerely,
 WILLIAM J. GUSTE, JR. Attorney General
 BY: _______________________ JAMES M. ROSS Assistant Attorney General
JMR:tm
OPINION NO. 75-491
June 9, 1975
R.S. 44:7 as amended by Act 315 of 1974.
Re: Medical and hospital records may be released without a patient's consent if they are material and relevant to any action brought by the patient, or relevant to an action for wrongful death brought by his survivors, or if requested by a bona fide agency, school, or committee and used solely for medical purposes. Relevant medical records may also be subpoenaed if a deceased patient's will is contested. In all other cases, including investigation by law enforcement officials, a patient's specific consent is necessary for a release of the records.
Re: Confidentiality of medical records.
Ms. Sandra Mann RRA, Medical Record Department Earl K. Long Memorial Hospital 5825 Airline Highway Baton Rouge, Louisiana 70805
Dear Ms. Mann:
In your letter of April 7, 1975, you ask for an opinion on the following:
(1) When can medical records be subpoenaed?
 (2) When is patient authorization necessary for release of information? In giving opinion you are particularly concerned about releasing information to Probation and Parole officers, District Attorney, Police Department and to the Federal Bureau of Investigation.
 (3) When is patient authorization not necessary for release of medical records?
R.S. 44:7, which concerns the confidentiality of hospital and medical records was amended by Act No. 315 of 1974 to provide for the use of medical records in certain instances. A copy of Act No. 315 is enclosed for your convenience
It is the opinion of this office that hospital and medical records of a patient are subject to a court subpoena only in the following instances:
(1) By written consent of the patient.
 (2) If there is a court suit contesting the validity of the patient's will or the validity of any instrument executed by the patient in which property is conveyed if the records are relevant as to the mental condition of the patient.
 (3) If an action to recover damages for the wrongful death of the patient has been brought by his survivors.
 (4) If the patient brings an action to recover damages for workmen's compensation, personal injury, disability or other benefits.
A patient's specific authorization for the release of medical or hospital records is not necessary in the following instances:
 (1) If the medical or hospital records are material and relevant to any action brought by the patient for damages, for personal injuries, workmen's compensation, disability benefits, or any other benefits. The bringing of such an action constitutes consent of the patient to the release of the hospital and medical records.
 (2) If the patient's survivors have made a claim, demand or have brought an action for the wrongful death of the patient. Such claim, demand or action constitutes consent to the release of the medical records.
 (3) Information, interviews, reports, statements, memorandum, or other data relating to the condition and treatment of any patient may be released to the Division of Health Maintenance and Ambulatory Patient Service of the Louisiana Health, and Social and Rehabilitation Services Administration, Louisiana State Medical Society, Medical Schools, or bona fide medical societies or committees or hospital committees to be used in the course of any study for the purpose of reducing morbidity or mortality or reviewing treatment of patients. In all such cases except where an immunization survey is being conducted on behalf of the Division of Health Maintenance and Ambulatory Patient Services of the Louisiana Health, and Social and Rehabilitation Services Administration, the confidentiality of the patient's identity must be preserved.
In all situations, other than those listed above, a patient's medical or hospital records may not be released to anyone, including probation and parole officers, district attorneys and police departments without the patient's written consent.
For your information we are enclosing a copy of Senate Bill No. 46 which, if passed, would amend R.S. 44:7.
We trust that this answers all of your questions. If, however, you desire clarification as to some point or have further questions, please do not hesitate to call us.
Very cordially yours,
 WILLIAM J. GUSTE, JR. ATTORNEY GENERAL
 By: J. MARVIN MONTGOMERY STAFF ATTORNEY
JMM:eb
OPINION NUMBER 92-307
RELEASED JULY 2, 1992
R.S. 44:36
94 Schools
Data of students who have left the system, personnel information, and state reports that constitute public records must be retained 3 years.
Dr. Eve Kryssing Brannan Orleans Parish Public Schools 4100 Touro Street New Orleans, LA 70122
Dear Dr. Brannan:
This office is in receipt of your request for an opinion of the Attorney General relative to retention of various types of school records. Your questions are as follows:
 1. What type of information has to be retained on a student who has either graduated, expired or permanently left the school system;
 2. What type of information has to be retained on personnel and for how long;
 3. What state reports should be retained such as outdated Minimum Foundations Reports, Pupil Progression Plans, etc.?
In answering your questions it is important to note that public bodies are required to preserve "public records", and it follows our initial inquiry should be directed at the question if the records about which you inquire are "public records".
In Atty. Gen. Op. No. 89-602 this office observed a parish superintendent is required under R.S. 17:415 to "make and keep such school records as shall be prescribed by the state superintendent of education." It was observed that except for confidential records, all records maintained by the parish superintendent are public records and subject to public inspection. Accordingly, it was concluded that "the parish superintendent must share with the public all information maintained by him or by the parish school board, and not explicitly declared by law to be confidential, since this is a government entity making decisions which affect the public at large."
R.S. 44:36 mandates that all persons having custody or control of any public record shall preserve them for at least three years from the date on which the public record was made unless a formal retention schedule has been executed to provide otherwise.
However, we do not believe the requirement that public records must be maintained for three years would preclude a requirement by the State Board of Elementary and Secondary Education from requiring the record of a student's name, address, grades, attendance record, classes attended and year completed be maintained for a longer period of time or indefinitely.
As you point out, you sought this opinion "in absence of pertinent statutes", and we can only make our conclusions based upon the statutory requirements that public records be retained for three years. However, we recognize that the proper functioning of the school systems would logically require retention of certain student data for a longer period of time. The only statutory reference we find is in R.S. 17:3385 wherein it provides, when a regionally accredited institution of higher education ceases to operate, arrangements for a repository for student's records is required, and the student records are to be preserved "in a manner which insures that the records are continually available to: (i) Each former student for the ordering of transcripts or any other legitimate purpose." To be consistent records for transcripts for all students should be available for a period longer than three years, and we can only presume this would be by rules and regulations of the State Board of Elementary and Secondary Education.
Since we find no statutory law in regard to retention of student information, we would recommend inquiry be made to the Board of Elementary and Secondary Education as to their rules and regulations, if any, in this matter.
With regard to what type of employee information has to retained and how long, we again make reference to retention of public records for three years. In Atty. Gen. Op. No. 90-364 a discussion was given as to what constitutes the public record portion of personnel files. It was observed that only writings which are used in the performance of the functions of the public body should be classified as public record, and, accordingly, personnel documents to be preserved as public records for three years are only those with "information deemed relevant to the functioning of the public body." Based upon R.S. 44:12 it was noted that all medical records, claim forms, life insurance applications, requests for payment of benefits, and all other health records of employees are exempt from the public records law as is unlisted telephone numbers and addresses requested to be confidential.
Therefore unless there are rules and regulations requiring retention of personnel data for a longer time, we must conclude the law only mandates retention of that portion of the data that is public record for three years.
A similar conclusion must be reached in regard to state reports unless they pertain to federal funding. As noted in Atty. Gen. Op. No. 79-387 when the program is partially or fully funded by federal monies it is subject to federal as well as state law on retention of designated records. 20 U.S.C. § 1232f provides:
 Each recipient of Federal funds under any applicable program through any grant, subgrant, contract subcontract, loan, or other arrangement * * * shall keep records which fully disclose the amount and disposition by the recipient of those funds, the total cost of the activity for which the funds are used, the share of that cost provided from other sources, and such other records as will facilitate an effective audit. The recipient shall maintain such records for five years after the completion of the activity for which the funds are used. (Emphasis added.)
We hope this sufficiently answers your inquiry, but if we can be of further assistance, please do not hesitate to contact us.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 BY: BARBARA B. RUTLEDGE Assistant Attorney General
BBR/2090f